### A02A0455. BURKE v. KING.
(562 SE2d 271)

JOHNSON, Presiding Judge.

In this custody dispute, Bennett Burke, the father of 18-year-old M. B.[1] and 14-year-old B. B., challenges the trial court's award of custody to Yvonne King, the children's maternal aunt. We granted the father's discretionary application to determine whether the trial court applied the correct standards of law in rendering its decision. Because the trial court's orders fail to find that parental custody in Burke would harm B. B., we reverse the grant of custody to King and remand the case for the trial court to consider the issues consistent with our opinion.

When Bennett Burke and Deborah Burke divorced in December 1996, Deborah Burke obtained custody of the couple's two minor children, then ages fourteen and ten. After the divorce, Bennett Burke regularly paid $200 per week in child support and telephoned the children every two or three days, but visited them only sporadically. He was then living in Tennessee and visited the children about ten to twenty times over the next three and a half years. On June 14, 2000, Deborah Burke died, six weeks after discovering that she had cancer. King, Deborah Burke's sister, helped care for her and the two children when her death became imminent. It was Deborah Burke's "last dying wish" that the children go to her sister. After her death, the children took up residency at King's house. When Bennett Burke sought to be reunited with his children, King said that she did not make them go.

On June 29, 2000, Burke, then a resident of Tennessee, filed a petition for a writ of habeas corpus in the Superior Court of Catoosa County alleging that King was illegally detaining his children. King filed an answer to the writ. A hearing was scheduled, and on the day of the hearing King filed a petition seeking custody. After this hear-

---

[1] Since M. B. is 18 years old, she is no longer at issue in this case.

ing, the trial court entered an order granting temporary custody to King. Nearly six months later, the trial court held a second hearing on King's petition for custody. By that time, M. B. was no longer a minor, and she and her younger brother had been living continuously and exclusively with King. Subsequently, the trial court issued a final order that awarded King the sole legal and physical custody of B. B. The order noted: "[t]he Court makes no finding that the Defendant is unfit, but finds that it is in the best interest of [B. B.] that custody be awarded to the Plaintiff, pursuant to the O.C.G.A. § 19-9-2."

After Burke unsuccessfully moved for reconsideration, the trial court, without hearing any further evidence, entered a second order containing additional findings. In this order, the trial court found that "the father has failed to maintain reasonable contact with the child" and that B. B. "has developed a close, strong familial bond with [King]. . . ." The trial court also found that Burke physically abused Deborah Burke and M. B. in the presence of B. B.[2] and verbally abused B. B. over the telephone. The order continues:

> The Court further finds that the Plaintiff has overcome the statutory presumption of parental custody in that by clear and convincing evidence, Plaintiff has shown that the child will suffer psychological and emotional harm if custody is granted to the Defendant — Father. The Court also finds by clear and convincing evidence that a grant of custody to petitioner will best promote the child's welfare and happiness and therefore it is in the best interest of this child that custody be vested in Petitioner.

In 1996, the Georgia General Assembly enacted the parent-third party custody statute.[3] This statute governs custody disputes between a biological parent and a limited number of third parties who are related to the child, including, as here, a maternal aunt. The statute "establishes a rebuttable presumption that parental custody is always in the child's best interest, thus favoring the biological parent over the third party."[4] Implicit in this statute are three presumptions: (1) the parent is a fit person entitled to custody, (2) a fit parent acts in the best interest of his or her child, and (3) the child's best

---

[2] The sole evidence of any physical abuse occurred during an isolated incident in late November 1996, when Deborah and Bennett Burke engaged in a physical struggle over some savings bonds that were inside the family safe. The divorce decree, entered a few days later, would award these bonds to Bennett Burke, who apparently had opened the safe to retrieve them when he was suddenly confronted by his angry wife.

[3] OCGA § 19-7-1 (b.1).

[4] *Clark v. Wade*, 273 Ga. 587, 590 (II) (544 SE2d 99) (2001).

interest is to be in the custody of a parent.[5] To overcome the statutory presumption in favor of parental custody, the third-party relative "must prove by clear and convincing evidence that the child will suffer physical or emotional harm if custody were awarded to the biological parent. Once this showing is made, the third party must then show that an award of custody to him or her will best promote the child's welfare and happiness."[6]

The Supreme Court of Georgia has defined harm to mean "either physical harm or significant, long-term emotional harm; we do not mean merely social or economic disadvantage."[7] In addition, the Supreme Court noted that while the death of a parent, divorce, or a change in home and school will often be difficult for a child, some level of stress and discomfort may be warranted when the goal is reunification of the child with the parent.[8]

In the present case, the record is devoid of any evidence showing that B. B. would sustain any physical harm. Nor was a finding made that the minor would suffer significant, long-term emotional harm. During the period between his mother's death in June and the December hearing, B. B. acknowledged that his father had tried to visit with him, but that he chose not to be with his father. B. B. had spoken with his father four or five times "but every time I end up like hanging up crying or something." But no explanation was forthcoming as to precisely what had upset the minor during each of those calls. Notwithstanding the trial court's finding of emotional abuse "over the telephone," such conduct apparently consisted of Burke's injudicious or intemperate comparisons between Deborah Burke and his present wife. According to B. B., his father "puts down my mom."

We note that this case presents a difficult situation for the trial court and all the parties involved. According to the record, Burke has made efforts to be a good father. His multiple telephone calls went unreturned, and the terms for visitation as set forth in the divorce decree were completely disregarded by King after the death of Deborah Burke. Moreover, it is undisputed that Burke and his wife uprooted themselves from Tennessee and purchased a home in Catoosa County to enable B. B. to continue to attend the same high school and to be near his friends. On the other hand, the minor at issue is 14 years old, and both he and his maternal aunt are attempting to comply with the "last dying wish" of B. B.'s mother that he remain with his maternal aunt. Although a last dying wish is not controlling, it has muddled the issues in this case.

[5] Id. at 593.
[6] Id. at 599 (V).
[7] Id. at 598 (IV).
[8] Id.

Examining the trial court's orders in light of OCGA § 19-7-1 (b.1) and *Clark v. Wade*,[9] it is clear that the trial court's findings do not satisfy the requisites necessary to award custody of a minor to a third party rather than a biological parent. The first order makes no finding whatsoever that Burke is an unfit parent and explicitly declines to do so. The only mention of harm to B. B. is verbal abuse over the telephone, but there is no mention of the type or severity of the verbal abuse. And, the second and final order makes a conclusory statement that the minor will suffer psychological and emotional harm if custody is granted to Burke. The order then states that a grant of custody to King will best promote the minor's welfare and happiness, and therefore it is in the best interest of this minor that custody be vested in King. In essence, the trial court commingled different theories of law without substantiating either with explicit findings of fact.[10]

While the trial court's order does find that B. B. "will suffer psychological and emotional harm," the order does not find that B. B. will undergo "significant, long-term emotional harm." And, as the Supreme Court noted, after the death of a parent, "some level of stress and discomfort may be warranted when the goal is reunification of the child with the [surviving] parent."[11] The trial court's order is silent as to whether the anticipated psychological harm would be attributable to the inherent stress of reunification or would be attributable to some type of emotional abuse inflicted by Burke.

In light of the inconsistency between the two orders, the absence of any finding of Burke's parental unfitness, and the absence of a finding supported by specific facts that establish by clear and convincing evidence that B. B. will suffer physical harm or significant, long-term emotional harm, we must find that the trial court abused its discretion in awarding custody to King.[12] We remand the case with direction that the trial court determine upon a clear and convincing evidence standard whether parental custody in Burke would harm B. B., as that word has been defined in *Clark v. Wade*, and, if so, whether an award of custody to King would be in B. B.'s best interest. If the trial court determines that custody should be awarded to King, the trial court should then delineate Burke's visitation rights.

*Judgment reversed and case remanded. Blackburn, C. J., and Miller, J., concur.*

---

[9] Id.

[10] See *Grantham v. Grantham*, 269 Ga. 413, 414 (499 SE2d 67) (1998).

[11] *Clark*, 273 Ga. at 598 (IV).

[12] See *Stalvey v. Bates*, 251 Ga. App. 895 (555 SE2d 477) (2001).

DECIDED MARCH 20, 2002.

*Larry B. Hill,* for appellant.
*John M. Giglio,* for appellee.