## A04A2105. LIVELY v. BOWEN.
(612 SE2d 625)

MIKELL, Judge.

We granted this discretionary appeal to consider whether the trial court erred by denying a mother's petition for modification of custody of her minor child. For the reasons set forth below, we affirm.

"If the record contains any reasonable evidence to support the trial court's decision on a petition to modify custody, it will be affirmed."[1] The record shows that permanent custody of the minor child was awarded to the paternal grandmother in 1998 based on a petition filed by the mother to establish paternity. The mother contends that she intended to request that only temporary custody be awarded to the grandmother and that she was misled by her attorney who was also working for the child's father and grandmother. The mother made arrangements for the care of her four-year-old daughter because she and the child's father separated and she had no means to care for the child as she was unemployed.

The mother testified that she experienced no difficulty visiting her child during the first two years the grandmother had custody.

---

[19] (Punctuation omitted.) *Royter*, supra at 257-258 (1) (a).
[20] See id.
[1] (Citation omitted.) *Weickert v. Weickert*, 268 Ga. App. 624, 627 (602 SE2d 337) (2004).

However, after she expressed an interest in regaining custody, the grandmother told her that "the child was hers" and the mother could not have her back. According to the mother, the grandmother then began demanding cash before allowing her to visit with her child. If the mother did not pay, she was not allowed to visit.

In April 2002, the mother filed a petition to set aside the original custody order based on her attorney's fraud and misrepresentation. Her petition failed because of the length of time that had passed since the order was first entered. There is no evidence that the mother appealed the denial of her motion to set aside the original custody order.

The mother contends the grandmother refused to allow her to see her child after she filed the petition to overturn the original custody order. As a result, in November 2002, the mother filed the petition for modification of custody at issue in the present appeal. She regained the right to visit her child after the parties entered into a temporary consent order in January 2003, that outlined a visitation schedule. At the time the parties entered into the consent order, it had been eight months since the mother had last seen her child. Once the consent order was entered, the mother visited with her child every other weekend.

At the time of the hearing on the petition to modify custody, the mother had been married for over two years to a man with whom she had been living for three years before their marriage. They live in a four-bedroom home that he has owned for eight years. His 15-year-old daughter from a previous marriage lives with them part of the time and with her mother part of the time. Neither the mother nor her husband has a criminal history. The mother also completed a nurturing/parenting class and divorcing parents class.

The husband supports the mother's effort to obtain custody of her daughter and has paid $6,000 to the mother's attorney. The mother is a stay-at-home mom and the husband earns $41,000 per year working as a manager for Maaco Auto Painting, where he has been employed for over three years. The husband corroborated the mother's testimony that the grandmother prevented visitation for an eight-month period after the mother tried to set aside the original custody order.

The grandmother testified that she initially became involved in this matter because the Department of Family and Children Services was in the process of removing the child from the parents' custody. The grandmother's son contacted her and asked her to help him keep his child. She paid $200 to the wife's attorney for her son's representation. The attorney did not represent her.

Contrary to the testimony of the mother and her husband, the grandmother testified that during the eight months that the mother

did not see the child, the mother never sent a card or called. Further, although the current visits were going well, there were times since she has had custody of the child that the child wanted to see her mother, but her mother would not come or call. The grandmother also testified that the child had been seeing a psychologist for a year and that the treatment began because the child was having difficulty in school and continued because of the effect this case was having on her. She stated that the child told her that she was afraid that her parents were seeing each other and planned to take her away from the grandmother and that she and her mother had visited a friend of her father's and that her mother told her not to tell the mother's husband.

The grandmother opined that both of the child's parents were unfit. She said that when they were together, they fought and used knives and guns. Nonetheless, the grandmother testified that she is comfortable with the child visiting her mother at this point in time and does not fear for the child's physical safety when she is with her mother. In the grandmother's opinion, the mother is not, however, emotionally stable and should not be awarded custody of the child. In her opinion, the child is happy and should be allowed to remain with her and visit with her mother.

The grandmother testified that the mother has paid less than $1,000 in child support since the grandmother was awarded permanent custody. The original order provided that the mother would pay "reasonable child support, but not less than 20% of [her] gross income." The grandmother denied that she conditioned visits on the payment of cash. The grandmother maintained that she has always understood that she would have permanent custody of the child. She acknowledged that she had been awarded permanent custody without a hearing based on an order that was presented to the judge by the wife's attorney.

The guardian ad litem testified that each time that the issue of the child's removal from her grandmother's custody comes up, the child becomes visibly anxious. Additionally, the child has told her on more than five different occasions that she wants to stay with her grandmother and visit her mother. The guardian ad litem testified that she understood that the child was physically neglected while she was in the custody of her parents and that when she asked the mother about the neglect, the mother explained that during that time she was without a home on several occasions. Regarding the transfer of custody to the mother, the guardian ad litem stated that she was concerned about more than the normal stress the child would experience in connection with such a change. Specifically, she was worried

about the amount of security and stability the child would have while with her mother. While the guardian ad litem believed that at this stage of the mother's life, she is a fit parent, she was concerned that there would be an "emotional threat" to the child if custody were transferred to the mother.

The guardian ad litem opined that the child's emotional problems surfaced when she began visiting with her mother again after her mother's eight-month absence, which caused the guardian ad litem to recommend that the child begin treatment with a psychologist. The grandmother followed the recommendation.[2] The guardian ad litem also feared that the strides made by the child under her grandmother's care might be reversed under the mother's care. When the grandmother obtained custody of the child, the child was not the well-adjusted individual that she is now. During the four and a half years that the child was with her parents, she did not get the stability and security that she needed most, which is very important during those early formative years. If returned to her mother, the guardian ad litem opined that the child would need to continue to see a psychologist until she became an adult.

In sum, the guardian ad litem testified that she believed it was in the best interest of the child to remain with the grandmother, with whom she has lived for over five years. She thought it would be better for the child emotionally and financially, and would also provide her with the sense of stability and security that she needs.

The trial court denied the mother's petition for modification of custody by applying the standard set forth in OCGA § 19-7-1 (b.1). After reciting the facts before it and the factors outlined by the Supreme Court in *Clark v. Wade*,[3] the trial court concluded that clear and convincing evidence showed "a real threat of physical and emotional harm to the minor child if returned to her biological mother." Moreover, "an award of custody to the paternal grandmother will best promote the child's long-term health, welfare, and happiness."

1. On appeal, the mother contends the trial court erred because the grandmother failed to meet her burden of proving by clear and convincing evidence that the child would suffer physical or emotional harm if returned to her mother. We disagree.

In pertinent part, OCGA § 19-7-1 (b.1) provides that

---

[2] The psychologist did not testify.

[3] 273 Ga. 587 (544 SE2d 99) (2001). The factors outlined by the Supreme Court include: "(1) who are the past and present caretakers of the child; (2) with whom has the child formed psychological bonds and how strong are those bonds; (3) have the competing parties evidenced interest in, and contact with, the child over time; and (4) does the child have unique medical or psychological needs that one party is better able to meet." (Footnotes omitted.) Id. at 598-599.

in any action involving the custody of a child between the parents or either parent and a third party limited to grand-parent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

The plurality opinion in *Clark*, however, found that OCGA § 19-7-1 (b.1), enacted in 1966, meets federal and Georgia constitutional standards only if the third party is required to show by clear and convincing evidence "that parental custody would harm the child . . ." and that "the award of custody to the parent is not in the best interest of the child."[4] The harm which must be shown is "physical harm or significant, long-term emotional harm. . . ."[5] The appellant's enumeration of error does not challenge the trial court's findings regarding the child's best interest, but only its finding of emotional harm to the child. The record does not contain any evidence to support a finding of physical harm.

The superior court recited that it found "clear and convincing evidence of a real threat of physical and emotional harm to the minor child if returned to her biological mother." In deciding whether the record supports the trial court's finding of emotional harm, we are mindful that our Supreme Court in *Clark* expressly instructed that

---

[4] Id. at 598, 599. Only two justices concurred fully, but Justice Sears's special concurrence also approved of the "stringent harm standard set forth in the majority opinion." Id. at 600. Justice Hunstein in her special concurrence argued that that statute would be constitutional without requiring a demonstration that parental custody would harm the child. The three dissenters argued that the stringent harm standard was not stringent enough to make the statute constitutional. Accord *Jones v. Burks*, 267 Ga. App. 390 (599 SE2d 322) (2004); *Burke v. King*, 254 Ga. App. 351 (562 SE2d 271) (2002); *Stalvey v. Bates*, 251 Ga. App. 895 (555 SE2d 477) (2001).

[5] (Punctuation and footnote omitted.) *Clark*, supra at 598.

when contemplating the issues of harm and custody, a trial court should "go beyond the parent's . . . present fitness to encompass the child's own needs"[6] by considering

> a variety of factors. . . . These factors should include: (1) who are the past and present caretakers of the child; (2) with whom has the child formed psychological bonds . . . ; (3) have the competing parties evidenced interest in, and contact with, the child over time; and (4) does the child have unique medical or psychological needs that one party is better able to meet.[7]

The trial court's consideration of these factors is evidenced in its order. The trial court wrote:

> [T]he minor child has lived with the paternal grandmother since September 1998. During that time, the child has developed a significant psychological bond and a very strong relationship, as evidenced by the love and affection that the minor child exhibits for the grandmother as well as the love and affection exhibited by the grandmother for the minor child.

It can be inferred from the trial court's order that it considered and gave greater weight to the grandmother's constant contact with and interest in the child, than to the mother's. Immediately before concluding that there was evidence that the child would suffer long-term emotional harm, the trial court stated the following:

> The biological mother had failed since September 1998 to provide consistent child support for the minor child and her employment status and ability to provide support for her and the minor child on a long-term basis is questionable. This failure of support is a physical and emotional danger to the minor child. Additionally, the stability that the child enjoys with the paternal grandparent is important to her emotional and psychological health. If the biological mother were to be unable to care for the minor child again, this would be a psychological and emotional danger to the child.

The guardian ad litem, after conferring with the psychologist, opined that the child would suffer emotional harm if returned to

---

[6] Id.

[7] (Footnotes omitted.) Id. at 598-599.

parental custody and that the child would continue to need psychological treatment until reaching adulthood. This latter prognosis applied even if the child remained with the grandmother. It is a reasonable inference from the testimony of the defendant and the guardian, however, that the child's need for long-term psychological therapy would be even greater if custody were transferred to the parent. Considering the evidence in the case at bar in view of the four factors prescribed by our Supreme Court, it does seem that there was reasonable evidence to support the trial court's conclusion that the evidence of emotional harm is clear and convincing.

2. Based on our conclusion in Division 1, we need not address whether the order which granted the grandmother permanent custody passed constitutional muster.[8] We also do not need to decide herein the question, which was raised in the grandmother's brief, of which party properly bore the burden of proof and benefitted from the rebuttable presumption set forth in OCGA § 19-7-1 (b.1).[9]

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MARCH 25, 2005.

*Michael J. Anderson,* for appellant.
*Stephen M. Bonanno, James M. Allison, Jr.,* for appellee.

---

[8] There was no cross-appeal filed in the action, and the appellant did not enumerate as error the trial court's allocation of the burden of proof.

[9] As to the allocation of the burden of proof, see generally *Durden v. Barron,* 249 Ga. 686 (290 SE2d 923) (1982); *Villenueve v. Richbourg,* 217 Ga. App. 354 (457 SE2d 821) (1995).