**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 7, 2012**

# In the Court of Appeals of Georgia

A12A1564. CALLAWAY ET AL. v. GARLAND.

MCFADDEN, Judge.

Peggy and Mike Callaway appeal an order returning custody of their grandson to his mother, Wendy Garland. The Callaways argue, first, that the trial court lacked jurisdiction due to an earlier appeal; but because they failed to show that appeal costs had been paid in the earlier appeal, they have failed to show that the earlier appeal had supersedeas effect. And as reasonable evidence supports the trial court's decision to return custody to Garland, we affirm.

Garland was married to the Callaways' son. In the course of their divorce proceedings, the trial court awarded custody of the child to the Callaways and granted Garland visitation. Apparently, Garland filed a pro se notice of appeal of that order. The Callaways filed the instant action to modify the visitation provisions of the

custody award; they sought to suspend Garland's visitation with her son or to require the visitation to be supervised. Garland filed a counterclaim, seeking custody of her son. (The child's father, who is the Callaways' son, is not involved in the proceeding. He is being prosecuted for felony aggravated assault and cruelty to children, and his bond conditions prohibit him from having contact with the child.)

The trial court awarded Garland custody. The Callaways appeal.

1. *Supersedeas.*

The Callaways argue that the trial court lacked jurisdiction over the entire proceeding because Garland had filed a notice of appeal of the original custody order. "[I]n a civil action, the filing of a notice of appeal does not serve as a supersedeas until all costs in the trial court have been paid. Here, . . . there is no indication that [Garland] paid all costs in the trial court." (Citations omitted.) *Lott v. Arrington & Hollowell*, 258 Ga. App. 51, 54 (2) (a) (572 SE2d 664) (2002). Consequently the Callaways have not shown that supersedeas attached, and we must presume that the trial court had jurisdiction to enter the order now before us on appeal.

2. *Sufficiency of the evidence.*

The Callaways argue that the trial court erred in granting Garland custody. Once a court has awarded a third party permanent custody of a child in a proceeding to which a parent was a party, then

> the roles of the parent and the third party reverse; that is, the third party now has the prima facie right to custody as against the parent who has lost the right to custody. The parent can regain custody upon showing by clear and convincing evidence his or her present fitness as a parent and that it is in the best interest of the child that custody be changed.

*Durden v. Barron*, 249 Ga. 686 (2) (290 SE2d 923) (1982). "If the record contains any reasonable evidence to support the trial court's decision on a petition to modify custody, it will be affirmed." (Citation omitted.) *Lively v. Bowen*, 272 Ga. App. 479 (612 SE2d 625) (2005).

(a)     *Current fitness.*

The Callaways argue that Garland presented no evidence of her current fitness. But the trial court found that Garland was a fit parent who acts in the best interest of her child, and the record supports that finding. It found that Garland had overcome certain hardships, has demonstrated that her life is stable, and has demonstrated her good parenting abilities with her second child, a daughter, with whom her son has formed a strong bond. The report and testimony of the guardians ad litem support

3

these findings. The guardians testified that Garland was fit to have custody, basing their conclusion on their observations of her and her home, their discussions with her witnesses, her job stability and their observations of her care of her second child. This is reasonable evidence to support the trial court's conclusion that the evidence of the mother's fitness is clear and convincing. See *Lively*, supra, 272 Ga. App. at 486 (1).

(b) *Best interest of the child.*

The Callaways argue that there is no evidence that it was in the child's best interest for Garland to have custody. But the guardians ad litem expressed concern that the Callaways had intruded upon Garland's exercise of her visitation rights with the child and that the Callaways had subjected the child to repeated questioning in an attempt to influence him and elicit information that they could use against Garland. They recommended that custody be awarded to Garland but that, after a period of time, the Callaways be granted visitation because of their bond with him.

The trial court found that the grandparents had engaged in a pattern of behavior to alienate the child from his mother; that "[t]he grandparents [had] subjected [the child] to excessive forensic interviews and 'play therapy' in an attempt to gain information to use against the mother," even though the child had "suffered no physical, emotional or sexual abuse at the hands of the mother or in her care;" and

4

that the child's best interest would be served by living with his mother and his sister. The record supports that finding.

The guardians reported the Callaways took the child for more than ten interviews with various people in an effort to substantiate their unfounded suspicions that the child's stepfather had molested him. They reported, for example, that the grandparents took the child to be interviewed by play therapist Linda Silva, whom they told of their suspicions. While the grandparents remained nearby, Silva attempted to conduct a forensic interview with the child. On another occasion, also with the grandparents nearby, Silva asked the child whether the stepfather had tied him up with a belt. The guardians noted their concern that "with Linda Silva's encouragement[,] the grandparents . . . continued to look for any and all imperfections the mother may have."

Silva notified the Department of Family and Children Services of the grandparents' allegations. The Department made a referral, and the grandparents took the child for an interview at a child advocacy center. Although the child never made a conclusive disclosure of abuse, the grandparents asked the child advocacy center to conduct additional interviews. Staff member Janet Kowalski conducted eight forensic interviews with the child. At the time the court appointed the guardians ad

litem, the grandparents were making arrangements to take the child to yet another person for forensic interviews. In spite of the multiple interviews, the Department of Family and Children Services closed the case because the child made no disclosures of any sexual or physical abuse.

During the course of the hearing, the trial court expressed disapproval of these activities, saying at one point, "You're torturing that child," and at another, "nine interviews is absolutely insane." In his order, the trial court found, "The grandparents have subjected [the child] to excessive forensic interviews and 'play therapy' in an attempt to gain information to use against the mother to restrict her visitation with her son; these excessive interviews were not in the best interest of [the child]."

The record supports that finding. And it supports the trial court's finding of clear and convincing evidence that returning custody to the mother is in the child's best interest. See *Lively*, supra, 272 Ga. App. at 486 (1) ; see also Ceci & Bruck, *Jeopardy in the Courtroom: A Scientific Analysis of Children's Testimony* (Amer. Psychol. Assn. 1995), ¶. 87-105 (summarizing social science research evidencing that "interviewer biases can . . . influence a child's or adult's behavior in a significant manner"), ¶. 107-125 (summarizing research evidencing the "baleful effects" associated with repeated questioning).

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*