**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 21, 2016**

# In the Court of Appeals of Georgia

A16A0171. FLOYD v. GIBSON.                                    PE-006

PETERSON, Judge.

This is the second time this child custody case has come before us. The first time, the trial court's order awarding custody of the children to their maternal grandmother instead of their father left us unsure whether the trial court had made all of the required findings and considered all of the applicable factors. We vacated the order and remanded for the trial court to consider all the factors and make explicit findings. But on remand, the trial court instead adopted a proposed order from the grandmother that simply edited the prior order (based entirely on evidence now well over two years old) to include, as the trial court put it, the required "magic words." The father argues that the trial court's new order applied an incorrect standard and that the evidence did not support the court's custody determination. We again vacate

the trial court's order because the court failed to consider substantively all the circumstances of the case in accordance with our previous instruction, and remand for further proceedings consistent with this opinion.

Shannon Lee Floyd ("the father") and the mother, who were never married, have three minor children. The children lived with both parents until the parents separated in 2012, after which the children remained with their mother. Shortly thereafter, the children's mother was granted a temporary protective order against the father after he allegedly threatened to kill her and the children. The father was not separately charged for any crime associated with that incident and disputes the version of facts that formed the basis for the protective order. The mother maintained custody of the children but continued to leave them with the father for weekend visitations. In May 2013, the children were removed from their mother's custody after she suffered a drug overdose and were placed with Sherry Anne Gibson, the children's maternal grandmother ("the grandmother").

Soon thereafter, the grandmother petitioned for custody. The children moved into the grandmother's home, which was shared with the grandmother's 16-year-old son and the grandmother's husband, who had recently been released from prison. The father answered, counterclaimed for custody, and began the legitimation process.

2

During that process, it was revealed that the father was being treated with methadone, although the father disputed that drug addiction was the reason for the methadone treatment. The father was living at his mother's house, was employed, and had been paying child support. The judge awarded temporary custody to the grandmother because the father had not yet legitimated the children. Several months later, an order was entered legitimating the children.

In October 2013, the trial court held a permanent custody hearing. After receiving requested proposed orders from the parties, on November 5, 2013, the court entered the grandmother's proposed order awarding her custody of the children.[1] The father moved for a new trial, which was denied. The father appealed, arguing the trial court had applied an incorrect standard and that the evidence did not support the court's custody determination.

On March 19, 2015, we vacated the trial court's order and remanded for reconsideration, holding that it was not apparent whether the trial court had "made the requisite determination that the children would suffer 'either physical harm or significant, long-term emotional harm'" if placed in the father's custody as required by *Clark v. Wade*, 273 Ga. 587, 598 (IV) (544 SE2d 99) (2001) (plurality decision),

---

[1] The mother conceded she was not a placement option for the children.

or whether the trial court had "considered the four factors set forth in *Clark* with regard to custody determinations in cases in which certain third-party relatives seek custody from parents." *Floyd v. Gibson*, 331 Ga. App. 301, 303-04 (1) (771 SE2d 12) (2015) (physical precedent only).

Following remand, the father moved for a hearing, which the trial court granted. At the hearing, the court discussed with the parties how to proceed. The grandmother argued that the vacated order simply needed to be amended. The father objected, noting that all the evidence in the case was, at that time, nearly two years old, and that a change in circumstances warranted an emergency custody hearing. The trial court indicated that it did not intend to hear any new evidence, and that it would review a proposed order from the grandmother based upon the same evidence that had been presented nearly two years earlier. But the trial court also stated that it would set a hearing on the emergency custody motion.

Less than a week later, the trial court emailed the parties stating that it did not "see a need to re-litigate the case" and that it simply intended to amend its original order to "comply with what the Court of Appeals wants," which it described as simply adding "magic words" to the prior order. The trial court judge further stated, "I stand by my ruling, I just need an amended order to comply with the [Court of Appeals]."

4

Less than two weeks later on July 22, 2015, the trial court entered a final order, drafted by the grandmother's counsel, awarding permanent custody to the grandmother. The trial court attached an "addendum" to that final order, however, stating that the court had "concerns that the language expressed [in the order] may not directly address the reasons the Court of Appeals vacated the prior Order." The trial court also observed that the order was "based on the testimony before the Court on October 17, 2013" and that there "may have been substantial changes since that date[.]" For this reason, the trial court stated it would hold a hearing, though the record does not reflect any such hearing. Nevertheless, based on that well-aged evidence that may have changed substantially, the trial court found "it likely that future physical and mental harm may be done to the children if placed in the father's custody" and issued the order awarding permanent custody to the grandmother. This appeal followed.

1. The father correctly argues that the trial court failed to apply the proper standard in determining custody. In Georgia,

> a parent has a right of custody to h[is] child[ren] in preference to a third party unless there is clear and convincing evidence that the parent is unfit. The focus of such a determination of unfitness must be the parent's ability to provide for the child[ren] in a manner sufficient to

5

preclude the need for an entity of the government to intervene and separate the child[ren] from the parent, and a court is not permitted to terminate a parent's natural right to custody merely because it believes that the child[ren] might have better financial, educational, or moral advantages elsewhere, that is, the parent's ability to raise h[is] child[ren] is not to be compared to the fitness of a third person.

*Harris v. Snelgrove*, 290 Ga. 181, 182 (2) (718 SE2d 300) (2011) (citations omitted). OCGA § 19-7-1 (b.1), which governs custodial disputes between the father and grandmother, establishes a rebuttable presumption that it is in the best interest of the children for custody to be awarded to the father. OCGA § 19-7-1 (b.1). The Supreme Court of Georgia previously concluded that there are three presumptions implicit in the statute: "(1) the parent is a fit person entitled to custody, (2) a fit parent acts in the best interest of his or her children, and (3) the children's best interest is to be in the custody of a parent." *Clark*, 273 Ga. at 593 (II).

The father may lose custody of his children to the grandmother only "if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration *all the circumstances of the case*, determines that an award of custody to such third party is for the best interest of the . . . children and will best promote their welfare and happiness." OCGA § 19-7-1(b.1) (emphasis added). The

"best interest of the children" standard requires "the third party to show that parental custody would harm the child[ren]" in order to rebut the statutory presumption in favor of the parent. *Clark*, 273 Ga. at 598 (IV). The harm must be either physical "or significant, long-term emotional harm; we do not mean merely social or economic disadvantages." *Id.* "Once this presumption is overcome, the third party must show that an award of custody to him or her will best promote the child[ren]'s health, welfare, and happiness." *Id.*

Additionally, as we directed the trial court last time, the court should consider four factors with respect to determining custody and harm:

> (1) who are the past and present caretakers of the children; (2) with whom have the children formed psychological bonds and how strong are those bonds; (3) have the competing parties evidenced interest in, and contact with the children over time; (4) do the children have unique medical or psychological needs that one party is better able to meet.

*Floyd*, 331 Ga. App. at 303 (1) (citing *Clark*, 273 Ga. at 598-99 (IV)) (punctuation omitted).

The father correctly argues that the trial court applied the wrong standard when it made its tentative findings of future physical and mental harm. The standard requires a showing by the third party that a child "*will* suffer physical or emotional

7

harm if custody were awarded to the biological parent[,]" not that the harm "may" result, as found by the trial court. *See Clark*, 273 Ga. at 599 (V) (emphasis added). While we agree with the father's argument, we note that the simultaneous existence of both the order and the addendum that followed it creates an oddity here. In the order, the court appears to make its ruling quite decisively — but then calls into question the findings underpinning that ruling with its addendum. Taking the two orders together, along with the trial court's comments at the hearing and via email, it becomes entirely unclear what findings the trial court actually made. This lack of clarity is due in large part to the court's verbatim adoption of a proposed order with which the court appears not to have fully agreed. *See Outdoor Adv. Ass'n of Ga., Inc. v. Dep't of Transp.*, 186 Ga. App. 550, 550 (1) (367 SE2d 827) (1988) ("It has been noted that when the trial court adopts verbatim the proposed findings and conclusions of the prevailing party the adequacy of the findings is more apt to be questioned, the losing party may forfeit his undeniable right to be assured that his position has been thoroughly considered, and the independence of the trial court's thought process may be cast in doubt.") (citation omitted).

Our prior instruction in March of 2015 to the trial court was intended to do more than simply garner the addition of certain "magic words" to the trial court's

8

2013 order depriving the father of custody. Rather, the trial court was instructed to conduct a *substantive* analysis of the *Clark* factors, and determine whether the children would suffer physical "or significant, long-term emotional harm" by having custody awarded to their father. *See Floyd*, 331 Ga. App. 303-304 (1). The considerations the trial court was instructed to make were to be supported by findings of fact. While evidence of prior acts can support a conclusion that the children would suffer harm if custody were awarded to their father, the trial court failed to consider "all the circumstances of the case" when it declined to consider any evidence that was less than 21 months old at the time despite explicitly acknowledging that circumstances may have changed. The trial court's concession to the staleness of the evidence before it — offering a post-order hearing — is inadequate. This "order first, then hearing" approach is puzzlingly backwards.

The grandmother asks that we attribute any error in the revised order to her counsel instead of the trial court because her counsel drafted the revised order for the court and made the "required findings" for the court. But this argument underscores the necessity of our vacating the trial court's order, and misunderstands how the judicial process should work. An order adopted by a trial court becomes its own, and the findings must be its own (although it may be assisted by counsel). We cannot

9

apply the appropriate deferential standard of review to the trial court's findings of fact when it is entirely unclear that the trial court even made any such findings, or where it failed to base its findings, to the extent any were made, on contemporaneous evidence.

"[P]arents have a fundamental liberty interest in the care, custody, and management of their children and there can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to his offspring." *See In re M.F.*, 298 Ga. 138, 145 (2) (780 SE2d 291) (2015) (citations and punctuation omitted). When that fundamental interest is at stake, the court must give full, fair, and thoughtful consideration to the serious matter at hand. Accordingly, we again vacate the trial court's judgment, although we do not do so lightly. We are mindful of the additional delay this will cause both in the permanent placement of the children and in the adjudication of the father's parental rights, due in no small part to the time this court has had to expend due to unclear orders of the trial court. However, we are obligated to ensure that the law has been followed, and so we remand the case for reconsideration and an evidentiary hearing consistent with this opinion. To ensure a third error is avoided, we direct the trial court — following the evidentiary hearing

10

on remand — to craft its own order without the use of proposed orders from the parties.

2. In light of our holding in Division 1, we need not address the father's remaining enumerations.

*Judgment vacated and remanded with direction. Phipps, P. J., and Dillard, J., concur.*