McFadden, Presiding Judge, dissenting.
This is not a close case. The trial court's detailed findings of fact fully support his alternative conclusions that this child faces a prospect of serious harm and that she has been abandoned. I do agree that it would have been better, and more helpful to this court, if the juvenile court had more clearly connected up his findings of fact with his conclusions of law and with the statutory text. But we should not drag out this litigation for another year so he can present us with a more perfect order.
If this were a close case, the very serious issues Chief Judge Dillard raises in his concurring opinion would be salient. But this is not a case like In Interest of E. M. D. , 339 Ga. App. 189, 793 S.E.2d 489 (2016), where "the mother and child[ ] are bonded and emotionally close[.]" Id. at 205 (2) (b), 793 S.E.2d 489 (citation and punctuation omitted). Rather it is one where the evidence amply "support[s] a finding that the parent's relationship with the child, or lack thereof, is such that maintaining the status quo of foster care with a continued parental relationship would ... be harmful." Id. at 202 (2) (b), 793 S.E.2d 489.
So I join in the judgment and most of the analysis of Presiding Judge Barnes's dissent. I write separately to point out a distinction incidental to our analysis today but important in other cases.
I do not agree that the mother has failed to enumerate as error the juvenile court's finding of abandonment. "An error of law has as its basis a specific ruling made by the trial court." Felix v. State , 271 Ga. 534, 539, 523 S.E.2d 1 (1999). "The individual facets of appellants' attack on the legal ruling with which they took issue are arguments in support of a legal position and are not, in and of themselves, errors of law." Id.
Where it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what judgment or judgments were appealed from or what errors are sought to be asserted upon appeal, the appeal shall be *638 considered in accordance therewith notwithstanding ... that the enumeration of errors fails to enumerate clearly the errors sought to be reviewed.
OCGA § 5-6-48 (f). Here the mother has made it very clear that she is appealing from the termination of her parental rights.
Of course her appellate brief does not address the juvenile court's finding of abandonment. "With rare exceptions, this Court, like all appellate courts, should decide the issues presented by the parties, as the parties present them." Turner v. Flournoy , 277 Ga. 683, 686 (2), 594 S.E.2d 359 (2004). But I agree with the majority that this case is one of the exceptions.

Clark v. Wade , 273 Ga. 587, 596 (IV), 544 S.E.2d 99 (2001) (plurality opinion); see Meyer v. Nebraska , 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (noting that the "liberty interest guaranteed by the Fourteenth Amendment [to the United States Constitution] includes freedom to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home[,] and bring up children , to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." (punctuation omitted and emphasis supplied) ); see also Prince v. Massachusetts , 321 U.S. 158, 166, 64 S.Ct. 438, 88 L.Ed. 645 (1944) (noting that there is "a private realm of family life which the state cannot enter"); Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary , 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) ("The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."); In the Interest of M. F. , 298 Ga. 138, 144-45 (2), 780 S.E.2d 291 (2015) ("The presumption that children ordinarily belong in the care and custody of their parents is not merely a presumption of the statutory and common law, but it has roots in the fundamental constitutional rights of parents. The Constitution secures the fundamental right of parents to direct the upbringing of their children, and it protects a private realm of family life which the state cannot enter without compelling justification." (punctuation and citation omitted) ); Brooks v. Parkerson , 265 Ga. 189, 191 (2) (a), 454 S.E.2d 769 (1995) ("The U.S. Supreme Court has long recognized a constitutionally protected interest of parents to raise their children without undue state interference."); see also generally Doe v. Heck, 327 F.3d 492, 517-20 (II) (B) (7th Cir. 2003) (Manion, J.).

Supra note 1; see also 2 St. George Tucker, Blackstone's Commentaries with Notes of Reference to the Constitution and Laws of the Federal Government of the United States and the Commonwealth of Virginia 446 (Birch & Small 1803) ("The duty of parents to provide for the maintenance of their children, is a principle of natural law."); 2 James Kent, Commentaries on American Law 169 (O. Halsted 1827) (noting that "[t]he rights of parents result for their duties [to their children]," and "the law has given them such authority"); John Locke, Second Treatise of Government, Ch. 6, § 71 (Hackett Publishing Co., Inc. 1980, originally published in 1690) ("This shews the reason how it comes to pass, that parents in societies, where they themselves are subjects, retain a power over their children, and have as much right to their subjection, as those who are in the state of nature."); Hadley Arkes, The Return of George Sutherland: Restoring a Jurisprudence of Natural Rights 282-83 (1994) (characterizing the Meyer and Pierce decisions as containing "the logic of natural rights.").

U.S. Const . amend IX ("The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people");see also Ga. Const. amend. 1, § 1, ¶ 29 ("The enumeration of rights herein contained as a part of this Constitution shall not be construed to deny to the people any inherent rights which they have hitherto enjoyed.") (emphasis supplied).

See In the Interest of E. G. L. B. , 342 Ga. App. 839, 848, 805 S.E.2d 285 (2017) ("The constitutional right of familial relations is not provided by government; it preexists government. This cherished and sacrosanct right is not a gift from the sovereign; it is our natural birthright. Fixed. Innate. Unalienable.") (punctuation and citation omitted).

In the Interest of D. M ., 339 Ga. App. 46, 52, 793 S.E.2d 422 (2016) (punctuation omitted); accord In the Interest of J. C ., 242 Ga. 737, 738 (1), 251 S.E.2d 299 (1978) ; In the Interest of S. O. C. , 332 Ga. App. 738, 743, 774 S.E.2d 785 (2015) ; In the Interest of J. V. J ., 329 Ga. App. 421, 425, 765 S.E.2d 389 (2014) ; In the Interest of C. J. V. , 323 Ga. App. 283, 283, 746 S.E.2d 783 (2013) ; In the Interest of M. A. , 280 Ga. App. 854, 856, 635 S.E.2d 223 (2006).

In the Interest of M. F ., 298 Ga. at 145 (2), 780 S.E.2d 291 (punctuation omitted); accord Floyd v. Gibson , 337 Ga. App. 474, 479 (1), 788 S.E.2d 84 (2016).

Floyd , 337 Ga. App. at 479 (1), 788 S.E.2d 84.

I agree with the majority that the record supports the juvenile court's findings that R. S. T. was dependent due to a lack of proper parental care and control, that the dependency was likely to continue, and that termination of the mother's parental rights would be in R. S. T.'s best interests. I also agree with the majority that the juvenile court did not err in admitting the child psychology expert's testimony regarding the bonding evaluation.

The majority also concludes that the juvenile court merely recited the legal standard that continued dependency will cause or is likely to cause serious harm to the child "without any factual underpinning." But, the juvenile court's termination order contained several pages of factual findings regarding the mother, including findings about the mother's ongoing, severe mental health problems and her unresolved pattern of angry and aggressive behavior toward others. The juvenile court's order further stated that the conclusions of law (which included the determination that continued dependency would cause or likely would cause serious harm to R. S. T.) were based on the court's findings of fact. The juvenile court's written findings therefore were sufficient. See, e.g., Ray v. Denton , 278 Ga. App. 69, 72-73 (2), 628 S.E.2d 180 (2006) (holding that juvenile court's written findings were sufficient, where court's order terminating parental rights set out specific findings of fact and then "stated that its conclusions of law were based on its findings of fact and the verified petition").

According to the child psychologist, "secure attachment" means that R. S. T. "sees [her foster parents] as a secure base, that they will be able to meet her needs and be her safety net and be her source of support." The adoption case manager assigned to the case in November 2015 also testified that the child has a strong relationship with her foster parents, loves them, and calls them mommy and daddy.