**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 15, 2018**

# In the Court of Appeals of Georgia

A18A0575. JEWELL v. MCGINNIS et al.

MCMILLIAN, Judge.

This long-running custody case between the mother and the child's paternal grandparents is now before this Court for the third time. In *Jewell v. McGinnis*, 333 Ga. App. 108 (775 SE2d 539) (2015) ("*Jewell I*"), this Court vacated and remanded the trial court's order granting joint legal custody of C. M. to her mother and grandparents and directed the trial court to make the factual findings required under OCGA § 19-7-1 (b.1). On remand, the trial court entered a new order that contained factual findings and again granted joint legal custody to the mother and grandparents. The mother again appealed, and in *Jewell v. McGinnis*, 341 Ga. App. 896 (802 SE2d 306) (2017) ("*Jewell II*"), this Court reversed and remanded the trial court's order pursuant to our Supreme Court's opinion in *Stone v. Stone*, 297 Ga. 451, 455 (774

SE2d 681) (2015), which held that Georgia statutory law only permits joint legal custody arrangements between parents.

On remand, the trial court issued a new custody order, awarding sole legal and physical custody of C. M. to her grandparents (the "Third Final Order"). The mother once more appeals, asserting that the trial court erred in (1) considering evidence not before the Court; (2) awarding custody to non-parent third parties where the evidence was insufficient to conclude that parental custody would cause physical or long-term emotional harm to C. M.; (3) failing to make specific factual findings as to parental fitness or unfitness in its final order; and (4) failing to incorporate a permanent parenting plan pursuant to OCGA § 19-9-1. For the reasons that follow, we reverse.[1]

Viewing the evidence in the light most favorable to the trial court's decision, *Strickland v. Strickland*, 298 Ga. 630, 633-34 (1) (783 SE2d 606) (2016), the record shows that C. M.'s parents divorced in 2013 when she was five years old. Her mother and father were awarded joint legal custody, with the father awarded primary physical

---

[1] Although the grandparents allege that this Court lacks jurisdiction over this appeal because the mother's motion for contempt remains pending below, under OCGA § 5-6-34 (a) (11), "[a]ll judgments or orders in child custody cases awarding, refusing to change, or modifying child custody" are directly appealable. See *Froehlich v. Froehlich*, 297 Ga. 551, 554 (2) (775 SE2d 534) (2015) (OCGA § 5-6-34 (a) (11) authorizes immediate appeal without requiring compliance with interlocutory appeal procedures).

custody. In April 2014, the mother filed a complaint for emergency relief in the Superior Court of Newton County seeking modification of C. M.'s physical custody due to the father's incarceration on felony charges. That same day, C. M.'s paternal grandparents filed an emergency motion for custody. The trial court consolidated the two cases and, following a hearing, entered an order granting temporary custody of C. M. to the grandparents until the end of the school year, with custody alternating between the mother and grandparents on a weekly basis after the school year ended.[2]

In July 2014, the parties appeared for a final custody hearing. In August 2014, the trial court entered its first final order awarding primary physical custody of C. M. to the grandparents and joint legal custody to the mother and grandparents with specific visitation rights for the mother. In *Jewel I*, this Court remanded the case with direction to the trial court to make the required findings of fact and incorporated permanent parenting plan. On remand, the trial court issued its second final order, dated July 18, 2016, nunc pro tunc to its first final order issued on August 1, 2014, this time with factual findings and again granting joint legal custody of C. M. to the mother and grandparents with primary physical custody awarded to the grandparents.[3]

---

[2] The father was barred from any contact with C. M.

[3] The mother was also awarded visitation pursuant to the parenting plan.

3

In support of its order, the trial court focused on four areas of concern. First, it credited the testimony of Kelly Dodson, an associate professional counselor, who testified that C. M. has a strong bond with her grandparents and loves staying with them but exhibited apprehension when asked about her mother. Based on her observations, Dodson opined that C. M. was "struggling" with the alternating weeks between her grandparents and her mother and that it would not be good for C. M. to be removed from her school in the grandparents' school district. The trial court also noted that Dodson would not be able to continue her counseling with C. M. if she were moved from her grandparents' home.

Second, the grandparents presented evidence that the mother had posed for "sexually provocative" photographs of herself with various firearms to be used as advertising for her husband's business and that the mother lived with her husband for years before they were married. Third, the grandmother testified that one time C. M. returned to her home with cuts and bruises, which C. M. told her happened when she got pulled down while trying to find the owner of a lost dog in her mother's neighborhood. And finally, the grandmother complained that C. M. had gained 15 to 20 pounds since the time of the previous hearing.

On remand from *Jewell II*, the grandparents moved to reopen the evidence, and the mother objected to any further hearing or introduction of evidence. The trial court set a hearing but refused to hear any new evidence. Following a hearing "to determine the procedural posture of the case and to move forward with proceedings consistent with the Court of Appeals' opinion," the trial court entered its Third Final Order, awarding the grandparents both legal and primary physical custody of C. M., with the mother to have visitation pursuant to the parenting plan set forth in its initial final order entered in August 2014. This appeal followed.

1. We turn first to the mother's assertion that there was insufficient evidence to award custody of C. M. to the grandparents. At the outset, we emphasize that a parent's "right to the custody and control of one's child is a fiercely guarded right that should be infringed upon only under the most compelling circumstances." (Citation and punctuation omitted.) *In the Interest of K. M.*, __ Ga. App. __ (1), Case No. A17A1747, 2018 Ga. App. LEXIS 147, at *13 (1) (March 1, 2018). Custody disputes between a parent and close third-party relatives, including grandparents, are governed by OCGA § 19-7-1 (b.1). A mother may lose custody of her child to a grandparent only "if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an

5

award of custody to such third party is for the best interest of the . . . child[] and will best promote [her] welfare and happiness." OCGA § 19-7-1 (b.1).

This finding must be supported by clear and convincing evidence, and under Georgia law, the standard of clear and convincing evidence is "an intermediate standard of proof which is greater than the preponderance of the evidence standard ordinarily employed in civil proceedings, but less than the reasonable doubt standard applicable in criminal proceedings." (Citation and punctuation omitted.) *In the Interest of K. M.*, 2018 Ga. App. LEXIS 147, at \*18-19 (2). A trial court's "preference that custody of a child remain with someone other than her natural parents is wholly without consequence where the court lacks clear and convincing evidence to support that decision." (Citation and punctuation omitted.) Id.

When a third party, such as the grandparents in this case, challenges a natural parent's right to custody of his or her child, the challenging party must overcome three constitutionally based presumptions in favor of parental custody: "(1) the parent is a fit person entitled to custody, (2) a fit parent acts in the best interest of his or her child, and (3) the child's best interest is to be in the custody of a parent." (Citation and punctuation omitted.) *In the Interest of K. M.*, 2018 Ga. App. LEXIS 147, at \*14 (1). And the best interest of the child standard requires the third party to show that

6

parental custody would harm the child in order to rebut these presumptions in favor of the parent. *Clark v. Wade*, 273 Ga. 587, 598 (IV) (544 SE2d 99) (2001). Harm in this context has been defined as either physical or significant, long-term emotional harm, not merely social or economic disadvantages. *Brawner v. Miller*, 334 Ga. App. 214, 217 (1) (778 SE2d 839) (2015). Thus, under Georgia law,

> [t]he focus of such a determination of unfitness must be the parent's ability to provide for the children in a manner sufficient to preclude the need for an entity of the government to intervene and separate the children from the parent, and a court is not permitted to terminate a parent's natural right to custody merely because it believes that the children might have better financial, educational, or moral advantages elsewhere, that is, the parent's ability to raise [her] children is not to be compared to the fitness of a third person.

(Citation and punctuation omitted.) *Floyd v. Gibson*, 337 Ga. App. 474, 476-77 (1) (788 SE2d 84) (2016). In addressing harm with respect to determining custody, the trial court should consider a variety of factors, including:

> (1) who are the past and present caretakers of the children; (2) with whom have the children formed psychological bonds and how strong are those bonds; (3) have the competing parties evidenced interest in, and contact with, the children over time; (4) do the children have unique medical or psychological needs that one party is better able to meet.

7

(Citations omitted.) *Floyd*, 337 Ga. App. at 477-78 (1).

We are mindful that "[i]n the appellate review of a bench trial, a trial court's factual findings must not be set aside unless they are clearly erroneous." *Strickland v. Strickland*, 298 Ga. 630, 633 (1) (783 SE2d 606) (2016). However, even accepting each of the trial court's factual findings as true, and although it is clear that the trial court intended to act in the best interest of the child, the trial court was not authorized to conclude that the grandparents had demonstrated by clear and convincing evidence that an award of custody to the mother would cause either physical harm or significant, long-term emotional harm to C. M. See *Floyd*, 337 Ga. App. at 478 (third party required to show by clear and convincing evidence that the child *will* suffer physical or emotional harm if custody were awarded to parent, not that harm *may* result).

We will address each of the trial court's factual findings in turn. Although Dodson, who had met with C. M. only four times for an hour each and did not meet or speak with the mother or visit the mother's home, "expressed great concern as to what would happen if [C. M.] were to be removed from the [grandparents'] home," she offered no evidence that C. M. would experience physical or emotional harm in the mother's home. In fact, Dodson admitted that she is not sure whether C. M. would

8

exhibit the same signs of apprehension or anxiety if she were to live with her mother full time and that she was *not* opining that the mother is an unfit parent. She also conceded that she cannot say the mother is unable to provide stability for C. M., only that she believed C. M. is "most stable" with her grandparents. However, this is precisely the sort of comparison trap that trial courts are not permitted to fall into. See, e.g., *Floyd*, 337 Ga. App. at 476-77 (1) (parent's ability to raise her child is not to be compared to the fitness of a third person).

With respect to C. M.'s counseling services, Dodson confirmed that her employer does provide counseling in the county where the mother lives and that C. M. could continue her counseling there, albeit with a different counselor. And at no point did Dodson, or anyone else, testify that changing schools or counselors would subject C. M. to physical or significant, long-term emotional harm. Our Supreme Court has explained that, "a change in home and school will often be difficult for a child, but some level of stress and discomfort may be warranted when the goal is reunification of the child with the parent." *Clark*, 273 Ga. at 598 (IV). See also *Bell v. Taylor*, 334 Ga. App. 267, 269 (779 SE2d 42) (2015) (this type of harm falls within level of stress and discomfort that is an acceptable price for reuniting a child with her parent and insufficient to infringe fiercely guarded rights of a parent).

9

Turning to the "provocative" photographs, in which the mother was clothed in lingerie posing with various firearms, there is no evidence that C. M. had seen any of the photographs or experienced any distress or harm related to the photographs.[4] And although the trial court's order referenced "boastfully promiscuous" statements made by the mother on social media, there was no evidence of any such statement admitted at the hearing and no evidence that C. M. had read or been exposed to any inappropriate statements.[5] The trial court was also troubled by the fact that the mother lived with her boyfriend in a "meretricious relationship" before they married in June 2014. Again, however, there is no evidence that C. M. had been negatively affected by her mother's relationship in any way. Under Georgia law, a parent's cohabitation with someone is not a basis for denying custody or visitation absent evidence that the child was harmed or exposed to inappropriate conduct. See, e.g., *Arnold v. Arnold*, 275 Ga. 354, 354 (566 SE2d 679) (2002); *Brandenburg v. Brandenburg*, 274 Ga. 183, 184 (1) (551 SE2d 721) (2001).

---

[4] The trial court speculated that some day C. M.'s peers might see the photographs and tease her about them.

[5] The only reference to such a statement was in a hypothetical question posed to Dodson.

10

In addressing C. M.'s "rapid weight gain," the trial court acknowledged that no witness could identify the cause. And there was no evidence presented as to the child's current height, weight, or whether the weight gain was physically or emotionally causing her harm. And finally, the trial court found that C. M. had sustained admittedly "relatively minor" cuts and bruises while trying to find a dog's owner in the neighborhood, "all while unsupervised." However, there was no evidence presented that C. M. was not being supervised at the time she received those minor injuries. And there was no evidence that C. M. had experienced any other injuries while in the mother's care or that the mother otherwise left C. M. unsupervised. The evidence presented at the hearing was wholly insufficient to support a finding by clear and convincing evidence that awarding custody to the mother would cause either physical or significant, long-term emotional harm to the child. Accordingly, the trial court's judgment is reversed and the case is remanded with direction for the trial court to enter a custody award in favor of the mother. See *Bell*, 334 Ga. App. at 269.

11

2. Based on our holding in Division 1, the mother's remaining enumerations of error are moot.

*Judgment reversed and case remanded. Barnes, P. J., and Reese, J., concurs fully and specially*.

A18A0575. JEWELL v. MCGINNIS et al.

BARNES, Presiding Judge, concurring fully and specially.

I concur fully with the majority that the evidence fell short of satisfying the applicable standard enunciated in *Clark v. Wade*, 273 Ga. 587 (544 SE2d 99) (2001), where our Supreme Court held that "the best interest standard in the parent-third party custody statute [requires] the third party [to] prove by clear and convincing evidence that the child will suffer physical or emotional harm if custody were awarded to the biological parent." Id. at 599 (V), construing OCGA § 19-7-1 (b.1). I write separately only to emphasize that each case turns on its particular facts, and proper application of that standard in future cases may appropriately place custody of children with third parties. See, e. g., *Strickland v. Strickland*, 298 Ga. 630 (783 SE2d 606) (2016).

*I am authorized to state that Reese, J., concurs in this special concurrence.*