**FOURTH DIVISION**
**DOYLE, P. J.,**
**COOMER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**June 19, 2019**

# In the Court of Appeals of Georgia

A19A0427. IN THE INTEREST OF J. G., a child.

MARKLE, Judge.

The father of J. G. appeals the juvenile court's order finding J. G. ("the child") to be dependent and granting custody to the child's maternal grandmother. In so doing, the father contends that (1) the court erred in its finding of dependency because there was no clear and convincing evidence the child was dependent; (2) the court should have extended him a case plan for reunification with the child; and (3) the court made no finding that he was unfit to have custody prior to awarding custody to a third party. For the reasons stated below, we conclude that the juvenile court's order fails to sufficiently explain its conclusion as to dependency and third-party custody. Therefore, we vacate the juvenile court's order on dependency and custody and remand the case for further proceedings consistent with this opinion.

On appeal from an order finding a child to be a dependent child, we review the juvenile court's finding of dependency in the light most favorable to the lower court's judgment to determine whether any rational trier of fact could have found by clear and convincing evidence that the child is dependent. In making this determination we neither weigh the evidence nor judge the credibility of the witnesses, but instead defer to the factual findings made by the juvenile court, bearing in mind that the juvenile court's primary responsibility is to consider and protect the welfare of a child whose well-being is threatened.

(Citation and punctuation omitted.) *In the Interest of R. D.*, 346 Ga. App. 257, 259 (1) (816 SE2d 132) (2018). Furthermore, "there is no judicial determination which has more drastic significance than that of permanently severing a natural parent-child relationship. It must be scrutinized deliberately and exercised most cautiously. The right to raise one's children is a fiercely guarded right in our society and law, and a right that should be infringed upon only under the most compelling circumstances." (Citation omitted.) *In the Interest of D. M.*, 339 Ga. App. 46 (793 SE2d 422) (2016).

So viewed, the record shows that, in November 2016, the Division of Family and Children Services ("DFCS") investigated a report of inadequate supervision of the then six-month old child after her mother allegedly poisoned both her and the father by putting sulfur in their food. The father took the child to the hospital, where

2

he was met by DFCS personnel. Following a medical exam, and after speaking with the father, DFCS initially released the child into the father's custody, but subsequently removed the child and placed her with a family friend.

In January 2017, the child's maternal grandmother filed a deprivation petition against both parents, alleging that the child was dependent due to (1) the mother's history of drug abuse, erratic behavior, and arrest for attempting to poison the father and child; and (2) the father's lengthy criminal history, lack of employment, lack of stable housing, and inability to provide proper medical care for the child.[1] DFCS also filed a deprivation petition on behalf of the child.

Following an initial custody hearing, the juvenile court placed the child in the temporary custody of DFCS. The court issued a preliminary protective order, finding probable cause that the child was dependent due to abuse and neglect, and that the child was in need of the court's protection. At the custody and detention hearing, the father, proceeding pro se, stipulated to the child's dependency, allowing the child to

---

[1] We have held that "the juvenile courts should exercise great caution when entertaining deprivation proceedings brought by a non-parent to obtain custody from a parent, given the likelihood that the proceedings might be motivated by the person's desire to avoid a more stringent standard of proof applicable to a custody proceeding." (Citation and punctuation omitted.) *In the Interest of C. L. C.*, 299 Ga. App. 729, 733 (1) (683 SE2d 690) (2009). Where a deprivation petition amounts to a custody petition, the juvenile court lacks subject matter jurisdiction. Id. at 733 (1).

remain in DFCS's custody. The court also ordered the father to submit to a hair follicle drug test.

At a subsequent hearing, at which the father was represented by counsel, the father withdrew the stipulation to dependency. DFCS also declined to stipulate that the child was dependent. A child protective services investigator testified that DNA testing revealed the father to be the biological father. According to the investigator, the father was residing with his brother and niece, and he was currently employed. The investigator reported that the father's urinalysis drug screen test came back negative. On this basis, DFCS recommended the child be returned to the father. Although the juvenile court initially granted the father custody, it then vacated that order based on the prior stipulation of dependency. Thereafter, the father legitimated the child.

At a custody hearing, an officer testified that the father had been accused and charged with child molestation approximately 20 years ago, and that he subsequently pled guilty to misdemeanor battery. The officer, however, had not observed any interaction between the father and child. The court also heard other evidence of the father's lengthy criminal history, all occurring prior to the child's birth, and none of which involved children. Another officer, who investigated the alleged poisoning of

4

the father and the child, testified that, during his interactions with the father, he appeared to be paranoid and under the influence of drugs.

A DFCS worker advised the court that the child was not dependent, and recommended that DFCS's custody be terminated and the child returned to the father. He further advised that the father had no stipulations with regard to the prior child molestation charge that would prohibit him from being with his child. The child's mother also testified, stating that she felt the father was the best person to care for the child.

At a subsequent hearing, the juvenile court appointed a special advocate ("CASA"), who recommended non-reunification and that the child be placed with the maternal grandmother, and that the father be allowed visitation rights. The CASA admitted she had not visited the father's residence. The father's hair follicle drug screening test came back positive for amphetamine, methamphetamine, and cocaine. The attorneys for the father, mother, and DFCS all agreed that the father should be allowed to work a case plan in order to be reunited with the child. However, the juvenile court awarded custody to the maternal grandmother, with supervised

visitation for the parents, and denied the father's request to work a case plan. This appeal followed.[2]

1. The father argues the juvenile court erred in finding dependency because there was no clear and convincing evidence to support such a finding.[3] We conclude

---

[2] At the outset, we note that the new Juvenile Code applies in this case because DFCS's and the maternal grandmother's deprivation petitions were filed in January 2017. See *In the Interest of D. M.*, 339 Ga. App. 46, 50, n. 6 (793 SE2d 422) (2016). Only the maternal grandmother has filed an Appellee's brief, and there is no brief from the agency.

[3] We note that the father, acting pro se, stipulated to dependency at the initial hearing. Pursuant to OCGA § 15-11-103 (a) (2014), "[a] child and any other party to a proceeding under this article shall have the right to an attorney at *all stages of the proceedings* under this article." (Emphasis supplied.); see also *In the Interest of C. H.*, 343 Ga. App. 1, 9-10 (1) (b) (805 SE2d 637) (2017) (a party must be informed of his right to an attorney prior to any hearing). The statute further provides that a party other than the child must be informed of his right to an attorney and to waive that right; be given the opportunity to obtain counsel; and have court appointed counsel if he is deemed indigent. OCGA § 15-11-103 (g).

The juvenile court failed to follow OCGA § 15-11-103 (g) in its entirety. Knowing the father was pro se, the court allowed him to stipulate to dependency of the child. The record contains no colloquy in which the court advised the father of his right to counsel, nor does it show that the court inquired into whether the father was indigent or waiving his right to counsel, and the father did not receive court-appointed counsel. As such, it appears that the father was denied his right to counsel, at least as to the initial proceedings in which the stipulation to dependency occurred. *In the Interest of C. H.*, 343 Ga. App. at 9-10 (1) (b). Once represented by counsel, the father attempted to withdraw the stipulation, but the juvenile court seems to have ignored the withdrawal.

that the juvenile court's order is insufficient and, therefore, we must vacate the court's order, and remand the case with the direction that the court make the appropriate findings of fact.

An order entered following a dependency hearing "[s]hall include findings of fact which reflect the court's consideration of the oral and written testimony offered by all parties. . . ." OCGA § 15-11-111 (b) (2). "[T]he juvenile court is required to make factual findings and state not only the end result of that inquiry but the process by which it was reached." (citation and punctuation omitted.) *In the Interest of J. A. B.*, 336 Ga. App. 367, 370 (785 SE2d 43) (2016).

The juvenile court's order does not comply with these requirements. Rather, it does not set forth findings of facts, separate from the conclusions of law, in a manner that would permit us to review the merits of the challenges to the sufficiency of the evidence. Although labeled "Findings of Fact," the first five paragraphs of the order are merely a recitation of the procedural posture of the case with an overview of the background and issues presented, and evidence reviewed by the court. The remainder of the order simply outlines the court's ruling, with no rationale provided.[4]

---

[4] We note that the order was prepared and submitted by counsel for the maternal grandmother, the prevailing party.

"The findings of fact are not intended to amount to a brief of the evidence, and a mere recitation of the events that took place at the trial does not satisfy the requirements" of the statute. (Citation and punctuation omitted.). *In the Interest of B.G.*, 345 Ga. App. 167, 168 (1) (812 SE2d 552) (2018). The court's failure to make specific findings of facts and conclusions of law based on the evidence of record thus requires us to vacate and remand the case with the direction that the court make the appropriate findings of fact.

2. The father next argues that the trial court erred in denying his request for a reunification case plan, under OCGA § 15-11-200, absent any factual basis for doing so. Although we have concluded this matter must be remanded to the juvenile court for further proceedings as to dependency, we are compelled to address the juvenile court's refusal to grant the father an opportunity to pursue a case plan.

As we have indicated, the juvenile court is tasked with exercising great caution in deciding whether to sever the parent-child relationship and deny a parent's right to raise his child unless necessary "only under the most compelling circumstances." (Citations omitted.) *In the Interests of D. M.*, 339 Ga. App. at 46. Under the old Juvenile Code, the juvenile court was required to give the parent an opportunity to meet case plan goals. See *In the Interest of B. C.*, 250 Ga. App. 152, 155-156 (1) (550

SE2d 707) (2001) (evaluated under the former OCGA § 15-11-58 (a) (2), which provided that reasonable efforts should be made to preserve families and eliminate the need to remove a child from the home or, if removal becomes necessary, to at least make it possible for a child to return home as soon as possible). Under the new Juvenile Code, OCGA § 15-11-200, which replaced OCGA § 15-11-58, no longer requires the juvenile court to extend a case plan for reunification. However, absent any finding by the juvenile court, we can find no valid reason why the juvenile court declined to do so under the facts of this case.

Here, DFCS never made a recommendation for non-reunification. To the contrary, a DFCS worker recommended the child was not dependent, that DFCS's custody be terminated, and that the child be returned to the father. The record further shows that the parties and DFCS all agreed that the father should be allowed to work a case plan in order to be reunited with his child. The juvenile court's order granting temporary custody of the child to DFCS indicates that the court was satisfied that DFCS had made reasonable efforts to eliminate the need to remove the child from her home and reunify her with her father.

The record also shows that the CASA recommended non-reunification with the father and placement of the child with a fit and willing relative, but this was

9

apparently based on her inability to verify the father's living arrangements and place of employment. And although the court mentions in its final order that it received a full report from the CASA recommending placement with the maternal grandmother, and that the biological father had failed a drug test and had an extensive criminal record, the court's order does not provide a specific factual basis to support its conclusion not to allow the father a case plan. Particularly, nowhere in the juvenile court's order does it indicate any conduct of such an egregious nature as to render an attempt at working a case plan unwarranted. As we have concluded in Division 1, the juvenile court's order fails to comply with the mandate to make factual findings and to state not only the end result of the inquiry, but the process by which it was reached. *In the Interest of J. A. B.*, 336 Ga. App. at 370.

Accordingly, based on this record, we conclude that the court should specifically consider whether it is appropriate to permit the father to work a case plan. We, therefore, vacate the juvenile court's order on this issue.

3. Finally, the father argues the trial court erred in granting legal custody to the maternal grandmother in a dependency proceeding where there is no clear and convincing evidence of his unfitness as a parent or evidence of present dependency. We conclude the juvenile court erred in granting custody to a third party in this case.

10

Issues regarding custody between a parent[5] and a grandparent are governed by OCGA § 19-7-1 (b.1), which provides that

> in any action involving the custody of a child between the . . . parent and a third party limited to grandparent . . . , parental power may be lost by the parent . . . if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child . . . and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child . . . for custody to be awarded to the parent . . . of such child . . . , but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child. . . . The sole issue for determination in any such case shall be what is in the best interest of the child. . . .

Implicit in the statute is the presumption that: "(1) the parent is a fit person entitled to custody; (2) a fit parent acts in the best interest of his or her child; and (3) the child's best interest is to be in the custody of a parent." (Citation omitted.) *Jewell v. McGinnis*, 346 Ga. App. 733, 736 (1) (816 SE2d 683) (2018).

It is not necessary for the court to determine that the parent is unfit before awarding custody to the maternal grandmother. *Trotter v. Ayres*, 315 Ga. App. 7, 9

---

[5] The father legitimated the child and thus was the legal father and parent for purposes of the court's final order on custody.

(2) (726 SE2d 424) (2012). The juvenile court should also consider: (1) the past and present caretakers of the child; (2) with whom the child has formed a psychological bond; (3) whether the competing parties have evidenced an interest in the child over time; and (4) whether the child has unique medical or psychological needs that one party is better suited to address. *Jewell*, at 737 (1). What the court must determine is whether the maternal grandmother has established by clear and convincing evidence that an award of custody to the parent would cause either physical harm or significant, long-term emotional harm to the child. Id. (citation omitted.). If the maternal grandmother meets this burden, then she must show that an award of custody to her would best promote the child's health, welfare, and happiness. Id.

The juvenile court's order does not reflect that the maternal grandmother overcame the presumption here. Instead, it merely provides a recitation of facts, focusing on the father's extensive criminal history. The court made *no* explicit findings in its order that the grandmother presented evidence showing that awarding custody to the father would result in any harm to the child, nor does it indicate the maternal grandmother presented evidence showing that an award of custody to her would be in the best interest of the child. Moreover, the juvenile court's order fails to consider the relevant factors. As such, the court's order does not show that the

grandmother rebutted the presumption in favor of granting custody to the father or that the child's best interests would be better served by awarding custody to her. *Trotter*, 315 Ga. App. at 9 (2). Accordingly, because the juvenile court's final order does not reflect that the court applied the correct legal standard in this case, we vacate the court order as to custody.

For the foregoing reasons, we vacate the juvenile court's order and remand the case for further proceedings consistent with this opinion.

*Judgment vacated and case remanded. Doyle, P. J., and Coomer, J., concur.*

13