**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

June 28, 2021

# In the Court of Appeals of Georgia

A21A0483. BLACKWELDER v. SHUGARD et al.

REESE, Judge.

Ronald Blackwelder appeals from a Final Order and Decree of Legitimation ("Final Order") of the Superior Court of Burke County, which awarded sole custody of three minor children to Appellee Debbie Dye, the children's maternal grandmother. Blackwelder argues that the trial court erred in awarding custody to a third party absent clear and convincing evidence that the children would suffer physical or emotional harm if awarded to him, the children's biological father, and that the custody determination was based on clearly erroneous factual findings. For the reasons set forth infra, we disagree and affirm the Final Order.

The procedural history of this case spans more than five and a half years in the court below. In June 2015, Blackwelder filed a petition for legitimation and custody

of two children, M. B. (born in 2011) and A. B. (born in 2013). In December 2015, Appellee Krista Shugard gave birth to the parties' third child, M. S.

In November 2017, Blackwelder filed a motion for an emergency hearing, alleging that Shugard had allowed the children to excessively miss school; that she appeared to be highly intoxicated, delusional, and incoherent when Blackwelder would retrieve the children for visitation from her; and that her home was "filthy" and appeared to be unsanitary and unsafe for the children. Following a hearing, the trial court entered an Interim Order, awarding primary physical custody of the children to Blackwelder.

The court found that Shugard had failed a hair follicle drug test after intentionally falsifying a urine test to conceal her use of methamphetamines. Further, the Division of Family and Children Services ("DFCS") had intervened and temporarily placed the children with Blackwelder.

Noting that Dye had appeared at the emergency hearing and asked for grandparent visitation and/or custodial rights, the court added her as a second defendant. The court found that the children had been continuously living in a mobile home on Dye's property, which was 200 feet away from where Dye lived. Upon discovering Shugard's illegal drug use, Dye had initiated dispossessory proceedings

2

to remove Shugard from the property. The court found that it would be harmful to the children to prevent them from regular association with Dye and entered a parenting plan allowing her visitation.

In June 2018, Dye filed a motion to modify and clarify the Interim Order and for contempt, alleging that, since gaining custody of the children, Blackwelder had shown himself to be an unfit parent, specifically with regard to a May 2018 incident in which then-two-year-old M. S. had nearly drowned in a swimming pool and regarding Blackwelder's failure to communicate about the child's injury, in violation of the parenting plan. The court held a hearing and clarified the Interim Order but deferred ruling on the contempt motion.

Shugard filed an amended verified answer and counterclaim, raising additional allegations against Blackwelder and contending that she was drug-free and could provide a stable home for the children. Following a hearing on February 14, 2019, the court entered an order, awarding temporary custody to Dye as Blackwelder had failed a drug test and was living with a woman to whom he was not married, contrary to the best interests of the children.

The court held a status hearing six months later, and found that Blackwelder had married and that he disputed the results of the February drug test. At the hearing,

3

the court instructed Blackwelder to bring in an expert witness to support his argument that the positive result from the hair follicle drug screen was the result of environmental exposure and not illegal drug use. The court also ordered the parties to submit to another drug test that afternoon.

Following a final hearing held over three days in November and December 2019, the court entered its Final Order. The court found, inter alia:

> [Blackwelder] has one other child, born prior to his relationship with [Shugard]. He has no visitation rights with that child and no cognizable relationship with him. He has a history of domestic violence against those with whom he has shared a residence, including [Shugard]. While drinking beer, and engaging in an angry barrage of text messages to [Dye], he allowed the youngest child, [M. S.] (a toddler), to fall into a pool within a few feet of him, and drown. When the other children directed his attention to their drowned sister, he retrieved her from the pool. Another adult administered CPR and to resuscitate [M. S.] and she was hospitalized. [Blackwelder] then violated [the] Court's prior order requiring him to notify [Shugard] of any injury to, or hospitalization of, any of the children.

The court made additional findings regarding, inter alia, Shugard's unmanaged significant mental health issues and her tumultuous episodes with her new husband. The court found that the children had "spent significant periods of time in the home

4

of [Dye, who had] provided for their health and dental needs, as well as their subsistence, education and nurturing."

The court concluded that:

The procedural history of the case is reflective of the dynamics of the lives of [Blackwelder] and [Shugard] which dynamics have directly injured the children in controversy, presenting a real and present danger of physical, emotional, psychological harm to the children if either of said parties should be entrusted with unsupervised physical custody of them. [Dye] is the only party who has shown that she offers the children a continuously safe and healthful home environment.

Because the children "(have and) will suffer physical or emotional harm if custody were awarded to either biological parent[,]" the court found that it was in the children's best interests to be placed in the sole custody of Dye. Blackwelder appeals this order.

When reviewing an order in a child custody case, we view the evidence in the light most favorable to the trial court's decision. We will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations. We review de novo, however, the legal conclusions the trial court draws from the facts.[1]

---

[1] *Mashburn v. Mashburn*, 353 Ga. App. 31, 32 (836 SE2d 131) (2019) (citations and punctuation omitted).

With these guiding principles in mind, we turn now to Blackwelder's claims of error.

1. Blackwelder argues that the trial court referred in the Final Order to the meretricious relationship and the pool "incident," but that there was no evidence that any of the children had been harmed by his premarital cohabitation with his current wife and the pool incident was an isolated event during the 17 months in which he had custody. Blackwelder further argues that the trial court failed to make any findings that his delay in notifying Shugard of the injury or his child support arrears had caused the children any harm.

Custody disputes between a parent and close third-party relatives, including grandparents, are governed by OCGA § 19-7-1 (b.1).[2] A father may lose custody of his child to a grandparent only "if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the . . . children and will best promote their welfare and happiness."[3] This finding must be supported by clear and convincing evidence.[4]

---

[2] *Jewell v. McGinnis*, 346 Ga. App. 733, 735 (1) (816 SE2d 683) (2018).

[3] OCGA § 19-7-1 (b.1).

[4] *Jewell*, 346 Ga. App. at 736 (1).

6

The "best-interest-of-the-child" standard of OCGA § 19-7-1 (b.1) "requir[es] the third party to show that parental custody would harm the child to rebut the statutory presumption in favor of the parent. Once this presumption is overcome, the third party must show that an award of custody to him or her will best promote the child's health, welfare, and happiness."[5] Harm in this context means "either physical harm or significant, long-term emotional harm[.]"[6]

Narrowly construing the statute, the Supreme Court of Georgia held in *Clark v. Wade*:[7]

> In considering the issues of harm and custody, trial courts should consider a variety of factors that go beyond the parent's biological connection or present fitness to encompass the child's own needs. These factors should include: (1) who are the past and present caretakers of the child; (2) with whom has the child formed psychological bonds and how strong are those bonds; (3) have the competing parties evidenced interest in, and contact with, the child over time; and (4) does the child have unique medical or psychological needs that one party is better able to meet. An analysis of these factors, keeping in mind the statutory presumption of parental custody, will enable courts to award custody to

---

[5] *Clark v. Wade*, 273 Ga. 587, 598 (IV) (544 SE2d 99) (2001).

[6] Id.

[7] 273 Ga. at 587-588.

7

a third-party relative only when a real threat of harm would result from parental custody.[8]

The trial court's order explicitly addressed the *Clark v. Wade* factors. Specifically, the court noted Blackwelder's history of domestic violence and M. S.'s near-drowning, which occurred while Blackwelder was engaged in an angry barrage of text messages to Dye. The court concluded that, by clear and convincing evidence, the children would suffer physical or emotional harm if custody were awarded to either biological parent.

The record supports the trial court's findings that Dye had provided significant care for the children and that a real threat of harm would occur if custody were awarded to Blackwelder. We find no clear error.[9]

2. Blackwelder also contends that there was no evidence to support the trial court's findings that he had habitually failed to keep doctors' appointments for the

---

[8] Id. at 598-599 (IV) (footnotes omitted); cf. *Bell v. Taylor*, 334 Ga. App. 267, 269 (779 SE2d 42) (2015) (reversing award of custody to grandmother because the type of harm noted by the trial court fell "within that level of stress and discomfort that is an acceptable price for reuniting a child with a parent, and is insufficient to infringe the fiercely guarded right of a parent to have legal and physical custody of his or her child").

[9] See *Jewell*, 346 Ga. App. at 737 (1).

children and that, after failing a drug test, he refused to submit to a subsequent, court-ordered drug test.

In fact, there is some evidence to support these findings.[10] Dye testified that Blackwelder did not take M. S. for a scheduled follow-up appointment after her near-drowning and overnight hospitalization. Further, there was evidence disputing Blackwelder's testimony that the lab was closed when he tried to get the court-ordered drug test. We defer to the trial court's credibility determinations.[11]

As discussed in Division 1, supra, the record supports the trial court's findings that there was clear and convincing evidence that the children would suffer physical and emotional harm if placed with Blackwelder, and that an award of custody to Dye would best promote the children's welfare and happiness.[12] Accordingly, we affirm the Final Order.

*Judgment affirmed. Doyle, P. J., and Brown, J., concur.*

---

[10] See *Mashburn*, 353 Ga. App. at 32.

[11] See id.

[12] See *Harris v. Snelgrove*, 290 Ga. 181, 182-183 (2) (718 SE2d 300) (2011).