**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 22, 2015**

# In the Court of Appeals of Georgia

A15A1063. BRAWNER v. MILLER.

DILLARD, Judge.

In this custody dispute, Akintunde Brawner, the biological father of two minor children, challenges the trial court's award of custody of the children to Oscar Miller, the maternal grandfather. Specifically, Brawner contends that the trial court erred by applying an incorrect legal standard in rendering its decision and in finding that the children would suffer emotional harm if custody were awarded to him. For the reasons set forth _infra_, we affirm.

Viewing the evidence in the light most favorable to the trial court's judgment,[1] the record shows that Brawner and Camease Miller were high school sweethearts. In

---

[1] _See, e.g., Mitcham v. Spry_, 300 Ga. App. 386, 386 (685 SE2d 374) (2009) (noting that when reviewing a child-custody decision, this Court views the evidence presented in the light most favorable to upholding the trial court's order).

2001, Camease became pregnant, and although she and Brawner were not married, the couple moved into an apartment together before the April 2002 birth of their first son, S. B. In 2004, Camease gave birth to the couple's second son, M. B. But shortly thereafter, Camease and Brawner's relationship began to sour, and in 2006, they separated and Brawner moved out of the apartment. Unable to financially maintain the apartment on her own, Camease and the children moved into her father's (Oscar Miller's) home, in which Camease's two younger siblings also resided.

Over the course of the next several years, Camease occasionally attempted to live on her own, but for the vast majority of this time, she and the two boys lived with her father and siblings. And during this same time period, Brawner's interaction with the children was sporadic at best, despite the fact that he lived only five blocks away from Miller's home. In fact, Camease received the vast majority of assistance with the boys from her father and her younger siblings, rather than Brawner. Additionally, Brawner only occasionally paid child support after he and Camease separated. Indeed, in 2011, the Superior Court of Fulton County held him in contempt for failure to pay approximately $2,800.00 in child support.

On July 3, 2013, Camease was the victim of a homicide. Two weeks later, Brawner filed a petition seeking to legitimate the children and obtain custody.

2

Subsequently, Miller filed a motion to intervene, which the trial court granted, and then filed an answer and counterclaim, in which he too sought custody of the boys. After a brief discovery period, the trial court held an evidentiary hearing on the matter, in which Brawner, his parents, Miller, and Camease's siblings testified. At the conclusion of the hearing, the trial court granted Brawner's legitimation petition, but awarded custody of the children to Miller with permissive visitation to Brawner. And shortly thereafter, the court issued its final order, confirming the ruling it had issued from the bench. Brawner then moved for reconsideration, which the trial court denied. This appeal follows.

1. Brawner first contends that the trial court awarded custody of the children to Miller without finding that he was unfit as a parent and, in doing so, applied an incorrect legal standard. We disagree.

At the outset, we note that child-custody disputes involving a biological parent and a limited number of third parties who are related to the child, including grandparents, are governed by OCGA § 19-7-1 (b.1) (in accordance with the fundamental constitutional right of familial relations),[2] which provides that

---

[2] *See Strickland v. Strickland*, 330 Ga. App. 879, 882 (1) (769 SE2d 607) (2015) ("Parents have a constitutional right under the United States and Georgia Constitutions to the care and custody of their children."); *Lopez v. Olson*, 314 Ga.

3

in any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.[3]

As this Court has previously recognized, the following three constitutionally based presumptions[4] are to be used in construing the text of the foregoing statute: "(1) the

_____

App. 533, 540 (3) (724 SE2d 837) (2012) (noting that the Supreme Court of Georgia has "narrowly construed" OCGA § 19-7-1 (b.1) to "recognize parents' constitutionally protected interest in the care, custody, and management of their children.").

[3] OCGA § 19-7-1 (b.1).

[4] *See Troxel v. Granville*, 530 U.S. 57, 65 (II) (120 SCt 2054, 147 LE2d 49) (2000) (plurality opinion) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."); *id*. at 68 (II) (noting the constitutional presumption that "fit parents act in the best interests of their

parent is a fit person entitled to custody, (2) a fit parent acts in the best interest of his or her child, and (3) the child's best interest is to be in the custody of a parent."[5] But these presumptions can nonetheless be overcome by a third-party relative "showing, by clear and convincing evidence, that parental custody would harm the child."[6]

children."); *Parham v. J. R.*, 442 U.S. 584, 602 (III) (99 SCt 2493, 61 LE2d 101) (1979) (noting that the federal constitution's "concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions," and that "natural bonds of affection lead parents to act in the best interest of their children."); *see also* 2 St. George Tucker, Blackstone's Commentaries with Notes of Reference to the Constitution and Laws of the Federal Government of the United States and the Commonwealth of Virginia 446 (Birch & Small 1803) ("The duty of parents to provide for the *maintenance* of their children, is a principle of natural law."); 2 James Kent, Commentaries on American Law 169 (O. Halsted 1827) (noting that "[t]he rights of parents result for their duties [to their children]," and "the law has given them such authority"); John Locke, Second Treatise of Government, Ch. 6, § 71 (Hackett Publishing Co., Inc. 1980, originally published in 1690) ("This shews the reason how it comes to pass, that *parents in societies,* where they themselves are subjects, retain a *power over their children,* and have as much right to their subjection, as those who are in the state of nature.").

[5] *Trotter v. Ayres*, 315 Ga. App. 7, 8-9 (2) (726 SE2d 424) (2011) (punctuation omitted); *accord Clark v. Wade*, 273 Ga. 587, 593 (II) (544 SE2d 99) (2001) (plurality opinion); *Galtieri v. O'Dell*, 295 Ga. App. 797, 798 (673 SE2d 300) (2009).

[6] *Trotter*, 315 Ga. App. at 9 (2) (punctuation omitted); *accord Clark v. Wade*, 273 Ga. at 598-99 (IV) (plurality opinion); *id.* at 600 (Sears, J., concurring specially) (noting that the plurality "ultimately reaffirms the principles of *Brooks* [*v. Patterson*] by holding that disputes between parents and third parties concerning the custody of the parents' children must be resolved using the rigorous harm standard adopted in *Brooks*."); *Galtieri*, 295 Ga. App. at 798.

Specifically, harm in this particular context has been rigorously defined as "either physical harm or significant, long-term emotional harm, not merely social or economic disadvantages."[7] And once these presumptions have been overcome by such a showing, the third-party relative must then "prove that an award of custody to him or her will best promote the child's health, welfare, and happiness."[8] Thus, contrary to Brawner's contention, in applying the legal standard set forth in OCGA § 19-7-1 (b.1), a trial court need not *explicitly* determine that "the parent seeking custody is unfit[.]"[9] Rather, the court is instead required to determine that "the third-

---

[7] *Trotter*, 315 Ga. App. at 9 (2) (punctuation omitted); *accord Galtieri*, 295 Ga. App. at 798. *Cf. Floyd v. Gibson*, 331 Ga. App. 301, 303-04 (771 SE2d 12) (2015) (physical precedent only) (vacating trial court's judgment granting custody to maternal grandmother for failure to make the requisite determination that the children would suffer either physical harm or significant, long-term emotional harm if custody was awarded to the father).

[8] *Trotter*, 315 Ga. App. at 9 (2) (punctuation omitted); *accord Galtieri*, 295 Ga. App. at 798.

[9] *Trotter*, 315 Ga. App. at 9 (2); *see also Boddie v. Daniels*, 288 Ga. 143, 145 (702 SE2d 172) (2010) (holding that when "a third party seeks neither to terminate parental rights nor break up a natural family by removing the child from her biological parent's custody, 'federal constitutional law does not require a showing that the parent is unfit before custody may be awarded to [the] third party.'") (punctuation omitted). *Compare Quilloin v. Walcott,* 434 U.S. 246, 255 (II) (A) (98 SCt 549, 54 LE2d 511) (1978) (expressing "little doubt" that the fundamental right of familial relations would be violated if "a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some

6

party relative has established by clear and convincing evidence that awarding custody to the parent would cause either physical harm or significant, long-term emotional harm to the child."[10] Accordingly, Brawner's argument that the trial court erred by awarding custody to Miller without an *explicit* finding of parental unfitness lacks merit.[11]

2. Brawner also contends that the trial court erred in finding that the boys will suffer significant, long-term emotional harm if custody is awarded to him. Again, we disagree.

---

showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.").

[10] *Trotter*, 315 Ga. App. at 9 (2); *accord Clark*, 273 Ga. at 593 (II) (plurality opinion).

[11] It is important to emphasize that the present custody dispute is between a parent who has not cared for his children in quite some time and a grandparent who has commendably done so. In such cases, "the day-to-day bond of the parent-child relationship already has been interrupted, and the child may have formed strong and lasting relationships with the person who has been caring for him." *Clark v. Wade*, 273 Ga. at 600 (Sears, J., concurring specially). In contrast, a custody dispute involving a third party seeking to "break apart an intact parent-child relationship" implicates even greater constitutional concerns . . . ." *Id. Cf. Stone v. Stone*, ___ Ga. ___, ___ (774 SE2d 681) (2015) (holding that "construing [OCGA § 19-7-1 (b.1)] as authorizing the State to require a fit and capable parent to share custody of his child with anyone except the child's other parent would raise significant constitutional concerns.").

7

As the Supreme Court of Georgia has held when contemplating the issues of harm and custody, a trial court must go beyond the parent's biological connection or present fitness and consider a variety of factors, including:

> (1) who are the past and present caretakers of the child; (2) with whom has the child formed psychological bonds . . .; (3) have the competing parties evidenced interest in, and contact with, the child over time; and (4) does the child have unique medical or psychological needs that one party is better able to meet.[12]

Here, as the trial court found in its thorough final order, the two children have primarily lived with Miller since Brawner and Camease separated and have *never* lived with Brawner. Indeed, as Miller testified, the boys consider Miller's home to be their home. In addition, the record shows that the boys have a strong bond with Miller and their aunt, and that the strength and compassion endemic of this bond have been particularly important in the wake of their mother's tragic murder. Furthermore, since the end of his relationship with Camease, Brawner has utterly failed to fulfill his parental responsibility to assist in financially supporting his children to such an extent that a court held him in contempt. But most importantly (given the constitutional

---

[12] *Clark*, 273 Ga. at 598-99 (IV) (plurality opinion) (footnotes and punctuation omitted); *accord Boddie*, 288 Ga. at 145; *Lively v. Bowen*, 272 Ga. App. 479, 484 (1) (612 SE2d 625) (2005).

principles grafted onto the statutory regime at issue),[13] Brawner has interacted with the boys only sporadically since he and their mother separated, visiting them occasionally and attending only a few school events and extra-curricular activities despite living a mere *five blocks away* from Miller.[14] As Miller testified, and the trial court reiterated, the boys are still struggling emotionally from the sudden and tragic loss of their mother. And although they are beginning to heal from this severe

---

[13] *See Troxel*, 530 U.S. at 65 (II) (plurality opinion) ("The liberty interest at issue in this case—the interest of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court."); *Blackburn v. Blackburn,* 249 Ga. 689, 692 (2) (292 SE2d 821) (1982) (acknowledging that "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the United States Constitution . . . ."); *Brooks v. Patterson*, 265 Ga. 189, 191 (2) (a) (454 SE2d 769) (noting that the Supreme Court of the United States has "long recognized a constitutionally protected interest of parents to raise their children without undue state interference."); *In the Interest of J. E.*, 309 Ga. App. 51, 62 (711 SE2d 5) (2011) (Dillard, J., dissenting) (noting that "under both the United States and Georgia Constitutions, a parent has a fundamental constitutional right to, and liberty interest in, the care, custody, and management of his or her children, and that the State may not infringe upon or sever this fiercely guarded right of familial relations except in the most compelling and extraordinary of circumstances.").

[14] *Cf. In the Interest of E. G.*, 315 Ga. App. 35, 48 (726 SE2d 510) (2012) (Dillard, J., concurring fully and specially) ("[I]t is one thing if a parent desires to care for his or her child but simply lacks the financial wherewithal or emotional capability to do so but quite another for a parent to willfully disregard or abandon his or her parental duties."); *In the Interest of A. E. S.*, 310 Ga. App. 667, 671 (714 SE2d 148) (2011) (Dillard, J., concurring specially) (same).

9

emotional trauma, the healing process will undoubtedly be harmed if they are, at this point in time, uprooted from the only home they have ever known to live with a father who, while perhaps well-meaning, has yet to build a meaningful relationship with them. Given the particular and unique circumstances presented in the case *sub judice*, and in view of the four factors prescribed by our Supreme Court (noted *supra*), as well as the underlying constitutional principles (likewise noted *supra*), we conclude that there was clear and convincing evidence to support the trial court's conclusion that the children will suffer significant, long-term emotional harm if the father is given custody at this time.[15]

For all of the foregoing reasons, we affirm the trial court's award of custody to Miller.

*Judgment affirmed. Ellington, P. J., and McFadden, J., concur*.

---

[15] *See Lively*, 272 Ga. App. at 484 (1) (holding that paternal grandmother established by clear and convincing evidence in custody matter that child would suffer significant, long-term emotional harm if she were returned to custody of her mother).