**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 23, 2020**

# In the Court of Appeals of Georgia

A20A0024. BRADDOCK v. LINDSEY et al.

REESE, Presiding Judge.

Arthur Braddock files this discretionary appeal of the trial court's final judgment granting the child custody of T. M. B. to Harry Lindsey and Mellissa Lindsey ("the Lindseys"). Braddock argues that the trial court failed to make specific findings of fact and use the clear and convincing standard in its rulings. Braddock further argues that the trial court erred in several respects, including finding that T. M. B. would suffer psychological harm if she was removed from the custody of her maternal grandparents and finding that awarding custody to the grandparents was in the best interest of the child. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the trial court's judgment,[1] the evidence shows that in December 2014, Braddock married Heather Braddock and they had one child, T. M. B., born in May 2015. In September 2017, Braddock filed for divorce seeking, inter alia, joint temporary and permanent custody of T. M. B. The next month, the Lindseys filed a motion to intervene, seeking physical custody of T. M. B. Following a temporary hearing held in January 2018, the trial court granted temporary custody of T. M. B. to the Lindseys, granted Braddock visitation, and ordered both parents to pay monthly child support.

At the final hearing held in March 2019, Braddock testified that he lived with his girlfriend and her daughter, and that he helped to take care of the child. Braddock also testified that his five-year-old son lived with them, that T. M. B. "adore[d]" his son, and that T. M. B. and his son "d[id] everything together." Also, Braddock added that because he had been working as a correctional officer in a state prison since March 2018, he "stopped [his] drug abuse[.]" Further, Braddock testified that he had received treatment for bi-polar disorder. However, he was not currently taking any mental health medication although he had not been told by a doctor to stop taking his medication.

---

[1] See *Brawner v. Miller*, 334 Ga. App. 214 (778 SE2d 839) (2015).

Mellissa Lindsey testified that the Lindseys started taking care of T. M. B. when she was three months old, that they began caring for her five days a week three months later, and that T. M. B. began living with them when she was two years old. T. M. B. went to school and participated in gymnastics, ballet, and tap dancing activities, and the Lindseys paid for and took T. M. B. to the practices. T. M. B. attended a church preschool during the week and church on Sundays.

Mrs. Lindsey testified that she was concerned about T. M. B.'s visitation with Braddock because when T. M. B. returned home from visitation from Braddock, on one occasion she had a bruise and a red welt on her buttocks, and several times after visitation, T. M. B. returned with what appeared to Mrs. Lindsey to be "flea bites" on various parts of her body, including her arms, legs, and back. Mrs. Lindsey also testified that upon return from visitation with Braddock, T. M. B. was irritable, "thump[ed]" family members in the face, was "constantly sick[,]" was scared to go to the bathroom alone, wet the bed, and was scared of the dark. Mrs. Lindsey had taken photographs of the bruises and bites on T. M. B. between August and September of 2018, and the photographs were admitted into evidence. However, Mrs. Lindsey testified that she wanted Braddock to continue to have visitation with T. M. B.

Braddock rebutted Mrs. Lindsey's testimony, testifying that he had not been told of any bruises or bites found on T. M. B. and that the injuries did not occur while she was in his care. He further testified that neither he nor his girlfriend used corporal punishment and that T. M. B. was "clumsy[ and s]he might have [fallen]."

After the final hearing, the trial court granted the Lindseys final custody of T. M. B., finding that it was in the best interest of the child to remain in the custody of her maternal grandparents and that it would be harmful for T. M. B. to be taken out of her grandparents' custody because of the bites and bruises found on T. M. B. after returning from visitation at Braddock's home. The trial court also granted Braddock visitation with T. M. B. and ordered both of T. M. B.'s parents to pay monthly child support to the Lindseys.

Braddock appeals, arguing that the trial court erred in awarding custody to the Lindseys, and specifically in finding psychological harm would occur if T. M. B. were removed from their home and that Braddock's actions rose to the level of harm. Braddock further argues that the trial court failed to make specific findings of fact using clear and convincing evidence, and improperly used the best interest of the child standard instead of finding that Braddock was unfit to care for T. M. B.

OCGA § 19-7-1 (b.1) governs custody disputes between a biological parent and certain third-party relatives, including grandparents. The statute provides, in pertinent part:

> [I]n any action involving the custody of a child between the parents or either parent and a third party limited to grandparent, great-grandparent, aunt, uncle, great aunt, great uncle, sibling, or adoptive parent, parental power may be lost by the parent, parents, or any other person if the court hearing the issue of custody, in the exercise of its sound discretion and taking into consideration all the circumstances of the case, determines that an award of custody to such third party is for the best interest of the child or children and will best promote their welfare and happiness. There shall be a rebuttable presumption that it is in the best interest of the child or children for custody to be awarded to the parent or parents of such child or children, but this presumption may be overcome by a showing that an award of custody to such third party is in the best interest of the child or children. The sole issue for determination in any such case shall be what is in the best interest of the child or children.

Further, the Supreme Court of Georgia has stated that:

> Parents have a constitutional right under the United States and Georgia Constitutions to the care and custody of their children. This right to the custody and control of one's child is a fiercely guarded right that should be infringed upon only under the most compelling circumstances. . . . Aligned against the parents' constitutional right is the

5

child's constitutional right to protection of his or her person and the state's compelling interest in protecting the welfare of children.[2]

The third party must present clear and convincing evidence that the award of custody to the parent is not in the child's best interest.[3] On appeal, "[w]e will not set aside the trial court's factual findings if there is any evidence to support them, and we defer to the trial court's credibility determinations. We review de novo, however, the legal conclusions the trial court draws from the facts."[4]

With these guiding principles in mind, we turn now to Braddock's specific claims of error.

1. Braddock argues that the trial court failed to use the clear and convincing standard in awarding permanent custody of T. M. B. to the Lindseys, and failed to find that he (Braddock) was unfit to care for the child.

Braddock's contention that the trial court failed to use the clear and convincing standard in awarding custody of T. M. B. to the Lindseys is without merit. As our

---

[2] *Clark v. Wade*, 273 Ga. 587, 596-597 (IV) (544 SE2d 99) (2001) (punctuation and footnotes omitted).

[3] See id. at 599 (IV).

[4] *Mashburn v. Mashburn*, 353 Ga. App. 31, 32 (836 SE2d 131) (2019) (citation omitted).

precedent makes clear, "[t]he trial judge is presumed to know the law and presumed to faithfully and lawfully perform the duties devolving upon it by law."[5] Thus, although the trial court order did not use the words "clear and convincing" in its order, the trial court was bound to that standard by law.[6]

Further, Braddock has also failed to show that the trial court erred by not making a determination that he was unfit to care for T. M. B. When applying OCGA § 19-7-1 (b.1), a trial court need not make an actual finding that a parent seeking custody is unfit, but "[r]ather, the court is instead required to determine that the third-party relative has established by clear and convincing evidence that awarding custody to the parent would cause either physical harm or significant, long-term emotional harm to the child."[7] As discussed in Division 2, infra, the trial court did not err in awarding custody of T. M. B. to the Lindseys.

2. In several interrelated claims of error, Braddock argues that the trial court erred in finding that awarding custody of T. M. B. to the Lindseys was in the best

---

[5] *In the Interest of A. L. L.*, 211 Ga. App. 767, 770 (5) (440 SE2d 517) (1994) (citations and punctuation omitted).

[6] Id.

[7] *Brawner v. Miller*, 334 Ga. App. 214, 216-217 (1) (778 SE2d 839) (2015) (punctuation and footnotes omitted).

interest of the child. Specifically, Braddock contends that the trial court failed to perform the analysis for third-party custody under *Clark v. Wade*,[8] and failed to provide specific findings of fact to show that parental custody would harm the child and that an award of custody to the Lindseys promoted T. M. B.'s health, welfare, and happiness.

The Georgia Supreme Court has interpreted the best interest of the child standard in OCGA § 19-7-1 (b.1) as requiring the third party to show that parental custody would "harm" the child in order to rebut the statutory presumption in favor of the parent.[9] Once this presumption is overcome, the third party must show that an award of custody to him or her best promotes the child's health, welfare, and happiness.[10] The Supreme Court has explained that such "harm" means

> either physical harm or significant, long-term emotional harm; we do not
> mean merely social or economic disadvantages. In addition, we note that
> the death of a parent, divorce, or a change in home and school will often

---

[8] See *Clark*, 273 Ga. at 596-599 (IV).

[9] *Clark*, 273 Ga. at 598 (IV); see also id. at 593 (II) ("What has not changed under the new standard are three presumptions: (1) the parent is a fit person entitled to custody, (2) a fit parent acts in the best interest of his or her child, and (3) the child's best interest is to be in the custody of a parent.").

[10] *Clark*, 273 Ga. at 598 (IV).

be difficult for a child, but some level of stress and discomfort may be warranted when the goal is reunification of the child with the parent.[11]

Also, in considering harm and custody, trial courts should consider factors that go beyond the parent's biological connection or current fitness to provide for the child's needs, including:

> (1) who are the past and present caretakers of the child; (2) with whom has the child formed psychological bonds and how strong are those bonds; (3) have the competing parties evidenced interest in, and contact with, the child over time; and (4) does the child have unique medical or psychological needs that one party is better able to meet.[12]

In its order granting final custody of T. M. B. to the Lindseys, the trial court found that "[T. M. B] has resided with [the Lindseys] since [she] was approximately three months old. The parents have abrogated their parental responsibilities to the child at an early date and those parental responsibilities were assumed by the [Lindseys whom] have cared for the child in every way possible and have provided the child with a stable safe environment." The trial court further found that

---

[11] Id. at 598 (IV) (footnote omitted).

[12] Id. at 598-599 (IV) (footnotes omitted).

9

it would be harmful for [T. M. B.] to be taken out of the custody of the [Lindseys] because of the bites and bruises that, during the course of the hearing, have been shown to have been on the child when she arrives back from visitation exchanges from her father's house. Also, [the trial court] finds that removal of [T. M. B.] from the home of the [Lindseys] would cause great psychological harm to the child and would be contrary to the child's best interest.

Turning to the issue of harm, the evidence supporting the trial court's findings showed that on several occasions in the fall of 2018, T. M. B. returned from visitation with Braddock with bites on her arms and legs, and on at least one occasion, T. M. B. had a bruise and a red welt on her body. Further, there was testimony that after visitation at Braddock's home, T. M. B. was often irritable and would thump family members in the face. Although Braddock refuted this testimony, the trial court was authorized to credit Mrs. Lindsey's testimony alleging recent physical harm.[13]

Analyzing the trial court's final order under *Clark*, a trial court must first determine the past and present caregivers of the child.[14] Here, the trial court found

---

[13] See *Mashburn*, 353 Ga. App. at 32 (In custody decisions, credibility determinations are within the purview of the trial court judge who sits as the rational trier of fact.); *Whitehead v. Myers*, 311 Ga. App. 680, 680 (716 SE2d 785) (2011) ("When reviewing child custody decisions, we view the evidence in the light most favorable to upholding the trial court's order.") (citation omitted).

[14] *Clark*, 273 Ga. at 598 (IV).

10

that T. M. B. lived with the Lindseys from the age of three months until the date of the final hearing, which meets the first prong of the test. The second prong requires the trial court to examine with whom the child had formed psychological bonds and the strength of those bonds.[15] In its final order, the trial court determined that both of T. M. B.'s parents had "abrogated" their responsibility to the child early in her life while the Lindseys had cared for T. M. B. in every way possible and provided her with a safe, stable environment. The trial court found that removing T. M. B. from the Lindseys' care would cause "great psychological harm" to T. M. B., contrary to the child's best interest. There was evidence presented at the final hearing of testimony and photos showing that the Lindseys paid for and supported T. M. B. in various extracurricular activities, bought her clothes, and placed her in school. In contrast, evidence showed that after the child returned from visitation with Braddock, T. M. B. was irritable with family members and had visible bites on her body.

In the third prong, the trial court should consider the interest and contact the competing parties had with the child.[16] As stated previously, the trial court found that both of T. M. B.'s parents failed to care for the child since she was three months old

---

[15] Id.

[16] *Clark*, 273 Ga. at 598 (IV).

and the Lindseys have assumed those responsibilities. There was evidence at the hearing that T. M. B. spent time with both the Lindseys and Braddock. In the fourth prong of the test, the trial court should consider whether the child has unique psychological or medical needs.[17] Here, the trial court did not list any unique needs of T. M. B.

As shown above, the trial court issued findings that T. M. B. suffered physical harm during the visitations with Braddock. The trial court's finding of "great psychological harm" was supported by the testimony that T. M. B. would wet the bed, was scared to use the bathroom by herself, was irritable, and would thump family members in the face after returning from visitations in Braddock's home.

Based on the foregoing, and in light of our ruling in Division 1, supra, we conclude that the trial court properly awarded the Lindseys permanent custody of T. M. B., in the best interest of the child, and by clear and convincing evidence.

*Judgment affirmed. Markle and Colvin, JJ., concur.*

---

[17] Id. at 598-599 (IV).